RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0213A (6th Cir.)
File Name:  00a0213a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
　　　　*Plaintiff-Appellee,*

　　　*v.*

MARLON REED,
　　　　*Defendant-Appellant.*

No. 99-3394

———————————

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 98-00097—Herman J. Weber, District Judge.

Argued:  April 27, 2000

Decided and Filed:  June 30, 2000

Before:  NORRIS and GILMAN, Circuit Judges; HOOD,*
District Judge.

———————————

## COUNSEL

**ARGUED:**  Richard W. Smith-Monahan, OFFICE OF THE
FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, for
Appellant.  Timothy D. Oakley, ASSISTANT UNITED

———————————

*The Honorable Joseph M. Hood, United States District Judge for the
Eastern District of Kentucky, sitting by designation.

STATES ATTORNEY, Cincinnati, Ohio, for Appellee.
**ON BRIEF:** Richard W. Smith-Monahan, OFFICE OF THE
FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, for
Appellant.    Timothy D. Oakley, ASSISTANT UNITED
STATES ATTORNEY, Cincinnati, Ohio, for Appellee.

   HOOD, D. J., delivered the opinion of the court, in which
NORRIS, J., joined.  GILMAN, J. (pp. 7-17), delivered a
separate dissenting opinion.

––––––––––––––––

**AMENDED OPINION**

––––––––––––––––

   JOSEPH M. HOOD, District Judge.  On December 14,
1998, Marlon Reed entered a conditional guilty plea to one
count of possession with the intent to distribute crack cocaine
pursuant to 21 U.S.C. § 841(a)(1).  As a result of his plea, the
district court sentenced Reed to ninety-two months
incarceration with a three year period of supervised release,
and a fine of $3,500 with a special assessment of $100.
Having reserved his right to appeal the search and seizure
issue in his case, Reed filed a timely appeal of the district
court's decision to deny his motion to suppress the nineteen
individually wrapped crack cocaine rocks found in a Frito-Lay
bag on Reed's person.  This appeal specifically challenges the
district court's finding that probable cause for his arrest
existed.

## I.  Factual Background

   The events leading up to Reed's arrest are as follows:
Officers Joey Thompson and Robert Horton observed Reed
on the sidewalk premises of a housing development known as
the Butler Metropolitan Housing Authority (hereinafter
"BMHA").  The officers knew Reed by sight from prior
contact with him.  Officer Thompson had personally warned
Reed to stay away from the BMHA property on a previous
occasion as Reed was not a resident of the housing
development.  Since BMHA's premises contained twenty-six

"No Trespassing" signs, the officers approached Reed for the purpose of arresting him for criminal trespass pursuant to a Hamilton, Ohio ordinance.

When Reed attempted to quickly walk away, the officers subdued him. Officer Thompson then began a "pat down" of Reed who started to turn his body away. Reed then removed the Frito-Lay bag containing the crack cocaine, and attempted to toss it toward a friend standing nearby while simultaneously stating that he did not want to give up his "weed." A female picked up the bag, whereupon Officer Thompson immediately retrieved it from her. Reed was then taken to the Hamilton Police Department for booking.

Prior to trial, Reed filed a motion to suppress the crack cocaine. The district court determined that probable cause existed in Reed's arrest, and denied said motion on the basis that the evidence was subsequently obtained by the officers incidental to the arrest. In his appeal, Reed argues that probable cause was lacking, thereby rendering his arrest unlawful. Reed further argues that all evidence obtained as a result of this unlawful arrest should have been suppressed by the district court.

## II. Analysis

"In reviewing a district court's determinations on suppression questions, a district court's factual findings are accepted unless they are clearly erroneous; however, the district court's application of law to the facts, such as a finding of probable cause, is reviewed *de novo*." *United States v. Thomas*, 11 F.3d 620, 627 (6th Cir. 1993).

The threshold for probable cause is based upon "'factual and practical considerations of every day life' [that] could lead a reasonable person to believe that there is a probability that an illegal act has occurred or is about to occur." *United States v. Strickland*, 144 F.3d 412, 416 (6th Cir. 1998)(citing *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). Officers are not required to rule out every possible explanation other than a suspect's illegal conduct before making an arrest. *See*

*Strickland*, 144 F.3d at 416.  However, an arresting officer must be able to articulate "concrete facts" from which the "totality of the circumstances" indicates that an arrest is warranted. *Id.* at 415; *Gates*, 462 U.S. at 238.    The denial of Reed's suppression motion was based on the district court's finding of probable cause in Reed's arrest.  Reed argues that probable cause for criminal trespass was lacking under Hamilton city ordinance § 541.05.  Said ordinance provides in pertinent part:

> (a) No person, without privilege to do so, shall do any of the following:
> (1) Knowingly enter or remain on the land or premises of another;
> (2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes or hours, when the offender knows he is in violation of any such restriction or is reckless in that regard;
> (3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in a manner reasonably calculated to come to the attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access;
> (4) Being on the land or premises of another, negligently fail or refuse to leave upon being notified to do so by the owner or occupant, or the agent or servant of either.
> . . .
> (d) Whoever violated this section is guilty of criminal trespass, a misdemeanor of the fourth degree.

The officers based their finding of probable cause to arrest Reed for criminal trespass on the following factors:  (1) Reed was given prior warning not to enter BMHA property by Officer Thompson; (2) Reed was observed on BMHA property; (3) Reed was not a resident of the BMHA housing project; (4) there were twenty-six "No Trespassing" signs posted throughout the BMHA property, providing adequate

probable cause.  Consequently, the officers had the right to stop Reed under *Terry* and ask him whether he lived on the property or was visiting a resident.  But the officers had no right to immediately arrest him for criminal trespass.

I would therefore suppress the evidence of the crack cocaine and reverse the judgment of the district court.

Moreover, I believe that my view is consistent with the spirit of the Supreme Court's recent unanimous holding in *Florida v. J.L.*, __ U.S. __ , 120 S.Ct. 1375 (2000). In *J.L.*, an anonymous caller telephoned the police to inform them that they should watch for a black youth in a plaid shirt at a particular bus stop because he was carrying a gun. Six minutes later, officers went to that particular bus stop and found a youth meeting the caller's description. The officers stopped and frisked the suspect, uncovering a firearm. In concluding that the officers did not have a reasonable suspicion to stop the youth, and that evidence of the firearm should be suppressed, the Supreme Court commented that "the Fourth Amendment is not so easily satisfied." *Id.* at 1380. If the officers in *J.L.* did not have a reasonable basis to conduct even a *Terry* stop under the circumstances of that case, then I cannot fathom how the officers in the present case have satisfied the Fourth Amendment's higher probable cause standard in arresting Reed.

Finally, I note the government's alternative arguments that the crack cocaine should not be suppressed either because (1) it was in plain view or (2) it was abandoned by Reed. These arguments have little merit. Based on my view that the arrest of Reed was illegal, and because the illegal arrest caused Reed to remove the Frito-Lay bag from his pocket and throw it toward a friend standing nearby, the evidence from the bag is inadmissible under the "fruits of the poisonous tree" doctrine. *See Wong Sun v. United States*, 371 U.S. 471 (1963) (explaining the doctrine); *United States v. Simpson*, 944 F. Supp. 1396, 1404 (S.D. Ind. 1996) (holding that if there is a causal nexus between the police's misconduct and the "abandonment," then the evidence must be suppressed); *United States v. Foster*, 566 F. Supp. 1403, 1412 (D. D.C. 1983) ("[A]n abandonment that is the product of police misconduct is not voluntary and cannot, therefore, vitiate the taint of an illegal detention.").

In summary, the circumstances presented by this case gave the officers nothing more than a reasonable suspicion to believe that Reed was trespassing. This is far short of

notice; (5) Reed walked away upon the lawful approach of the officers. These factors must be measured up to the time at which Reed thought he was not reasonably "free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). The factors do not have to establish a prima facie case for criminal trespass; however, said factors must be sufficient to indicate to a reasonable person that an illegality has occurred or is about to occur. *See Strickland*, 144 F.3d at 416.

Where probable cause exists, "[a] police officer is permitted to make an arrest without a warrant for a misdemeanor committed in his presence." *United States v. Smith*, 736 F.3d 1414, 1416 (6th Cir. 1996). The Court finds that these five factors constitute the level of evidence necessary to establish probable cause for Reed's arrest. All five factors existed during the time in which Reed was free to leave.[1] A reasonable officer in the position of either Thompson or Horton could conclude from the totality of the circumstances that probable caused existed to arrest Reed for criminal trespass. Although Reed has set forth no controlling authority indicating that the officers must conclude prior to the arrest whether Reed enjoyed the privilege of entering or remaining on BMHA property, we are mindful of the discussion during oral argument that *Washington v. Blair*, 827 P.2d 356 (Wash. Ct. App. 1992) finds probable cause to be lacking in circumstances in which an officer had no knowledge of the existence of privilege prior to an arrest for criminal trespass. However, we believe the Washington state court decision was based upon a requirement negating the affirmative defense of privilege prior to arresting a person for

---

[1] According to the dissent, "the fact that Reed started to walk away when the officers approached may raise a suspicion that he was engaged in any one of a multitude of improper activities...." While that may be, the officers were entitled to infer that he was walking away because he knew he was not privileged to be there. They were not required to eliminate all other reasonable inferences. *See Strickland*, 144 F.3d 412, 416(6th Cir. 1998)(stating "[t]o find probable cause, the law does not require that we rule out every conceivable explanation other than a suspect's illegal conduct.")

trespass. This Circuit does not require such an added inquiry to the probable cause determination.

It is argued that the Supreme Court's decision of *Florida v. J.L.,* __ U.S. __, 120 S.Ct. 1375 (2000), which held that an anonymous tip, without more, is insufficient to justify a stop and frisk by an officer warrants reversal of the district court's denial of the motion to suppress. We disagree.

The officers' decision to stop the defendant in *J.L.* and frisk him for a concealed weapon was based "solely on a call made from an unknown location by an unknown caller." *Id.* at 1378. However, the decision by Officers Thompson and Horton to stop Reed for trespassing was based on the five factors identified above. These five factors, unlike an anonymous tip lacking any indicia of reliability, provided the officers with probable cause to stop and pat down Reed. For these reasons, *Florida v. J.L.* is distinguishable from the facts of the case *sub judice*.

## III.  Conclusion

There is no indication that the district court's findings of fact are erroneous. A review of the law applied to said findings of fact leads to a determination that the district court did not err in refusing to suppress the crack cocaine possessed by Reed on the night of his arrest. Said evidence was subsequently obtained by Officers Thompson and Horton incidental to Reed's arrest. Accordingly, we **AFFIRM** Reed's conviction and sentence.

Q. All right. So you had approached along with Officer Thompson to pat down some individuals that you saw standing on BMHA property; is that correct?

A. I grabbed my party to pat him down.

. . .

Q. And now how many people altogether were there when you approached that scene?

A. Initially there were approximately four, I believe four other parties.

Q. And when you approached that scene, was it your intention to search all four of those people?

A. We were going to pick up Mr. Reed for sure. I could not state what we were going to do with the others. They started to walk away as we approached.

Q. So if they hadn't walked away, you would have went ahead and done a pat-down on those people also; is that right?

A. Probably after we got Mr. Reed into custody, yes.

Q. And that's even though you had no idea whether those other two people were actually trespassing or not; is that right?

. . .

A. I didn't get to see who they were, so I'm not sure.

Q. So you had no idea whether they would have been trespassing or not, is that right –

A. The two people.

Q. – because they could have been residents?

A. That's fair to say.

The above testimony from the arresting officers clearly demonstrates that they thought it  irrelevant whether or not Reed was privileged to be on the property. In other words, the officers admit that at the time of the arrest they did not know whether Reed had recently moved into the BMHA property or had been invited there by others. They decided to arrest him for criminal trespass as soon as they spotted him, no questions asked. Under these circumstances, the wisdom of *Blair*, *Jones*, and *Jason Allen D.* cries out for a result contrary to that reached by the majority.

admitted that even before they saw Reed start to walk away, they had already decided to arrest him for criminal trespass.

Even if all five factors are considered collectively, they at most gave the officers a reasonable suspicion that Reed had no legitimate purpose for being there. This would have justified stopping Reed to inquire as to whether he lived on BMHA's property or was there by invitation. *See Terry v. Ohio*, 392 U.S. 1 (1968); *Washington v. Blair*, 827 P.2d 356, 359 (Wash. Ct. App. 1992). The officers, however, made no such inquiry.

At the suppression hearing, Officer Thompson gave the following response to the government's question:

Q.   And do you have information as to whether or not Mr. Reed had permission from the Housing Authority to be on that property?
A.   No, I did not.

Thompson also made the following statements on cross-examination:

Q.   Did you find out during the course of your investigation, though, that he did have a girlfriend there who had – he had a child by?
A.   I don't recall. I mean, I don't remember him saying that but it's possible, but it would have been irrelevant.
Q.   I'm sorry?
A.   It would have been irrelevant whether he was – had a girlfriend on the property.
Q.   Now, you would have stopped him anyway; is that right?
A.   That's correct. He wasn't with her at the time.

In addition, Officer Horton testified as follows in response to questions from the government's attorney:

---

**DISSENT**

---

RONALD LEE GILMAN, Circuit Judge, dissenting. In affirming the district court's denial of Reed's motion to suppress, the majority holds that he was legally arrested for criminal trespass even though the police failed to first ascertain whether Reed had a legitimate reason for being on the property. I respectfully dissent because, in my view, the police officers arrested Reed without having probable cause to do so.

Although not cited by Reed, I have found three cases with facts very similar to those before us that address the issue of probable cause in relation to criminal trespass. In each case, the court concluded that the officers must have probable cause to believe that the defendant was on the property without privilege before making an arrest.

The earliest case is *Washington v. Blair*, 827 P.2d 356 (Wash. Ct. App. 1992). Faced with an almost identical fact pattern, the Washington Court of Appeals held as follows:

Officer Williams simply drove up to Blair and ordered him into the police cruiser where he arrested him. Had Officer Williams taken a moment to ask Blair where he was going and for what purpose, he could have determined whether Blair was in fact visiting a friend or was trespassing. Because he knew Blair did not live in Roxbury Village, had admonished Blair not to return and had arrested him nearby for a drug transaction, Officer Williams had an articulable suspicion that Blair might be trespassing on September 1. Based on this information, Officer Williams could properly stop Blair, ask him why he was on the premises, and investigate to see if his purpose for being there was in fact legitimate. However, the fact that the officer had told Blair not to return to the premises does not, in itself, create probable cause for arresting him on the charge of criminal trespass.

*Id*. at 359 (citation omitted).

The majority attempts to distinguish *Blair* on the following basis:

> *Blair* . . . finds probable cause to be lacking in circumstances in which an officer has no knowledge of the existence of privilege prior to an arrest for criminal trespass. However, we believe the Washington state court decision was based upon a requirement negating the affirmative defense of privilege prior to arresting a person for trespass. This Circuit does not require such an added inquiry to the probable cause determination.

I do not believe, however, that *Blair* can be so easily distinguished. The ordinance in *Blair* made it illegal for a person who is not licensed, invited, or otherwise privileged to enter or remain on private property. *See Blair*, 827 P.2d at 358. Deciding if Officer Williams had probable cause to believe that Blair was committing a crime thus depended "on whether the circumstances known to the officer indicated that Blair was not on the property for legitimate purposes." *Id*. at 359.

Although the State of Washington provides an affirmative defense to criminal trespass if "[t]he actor reasonably believed that the owner of the premises . . . would have licensed him or her to enter or remain," *see Blair*, 827 P.2d at 359, that was not the focus of the *Blair* court's inquiry. Instead, the court focused on the *officer's reasonable beliefs*, not the actor's. Contrary to the majority's analysis, the *Blair* court did not require the state to negate an affirmative defense. What it did require was a showing that the officer had probable cause to believe that the defendant was on the property without a legitimate purpose at the time of his arrest.

The next case with facts very similar to those before us is *Jones v. Commonwealth*, 443 S.E.2d 189 (Va. Ct. App. 1994). In *Jones*, an owner of an apartment complex who had posted "No Trespassing" signs complained to the City of Richmond's police department that he was having problems

First of all, the fact that on one prior occasion Reed had been ordered off of BMHA's property by Officer Thompson indicates at most that Reed may not have been on the property by invitation on that particular occasion. On the other hand, because Officer Thompson could not recall whether his previous encounter with Reed was weeks or months earlier, Reed could have became a resident in the interim. Moreover, Thompson's past encounter with Reed provides no answer to the question of whether Reed had been invited onto BMHA's property on the day he was arrested.

Second, the majority cites the uncontested fact that Reed was on BMHA's property. This, however, has no bearing on the issue of whether the officers had probable cause to believe that Reed was on the property *without privilege*. The case would be different if the apartment manager had complained about Reed, or had requested the officers to remove him, because then the officers would have had probable cause to believe that he was not privileged to be there.

Third, there is no indication in the record that at the time of Reed's arrest the officers *knew* that Reed was not a resident. In fact, the district court did not even make such a finding. The testimony at the suppression hearing indicates that the basis for Officers Thompson and Horton believing that Reed was not a resident of the BMHA property was solely Thompson's past encounter with Reed. I thus find the majority's reliance on this factor to be misplaced.

Fourth, the fact that there were twenty-six "No Trespassing" signs posted on BMHA's property is similarly irrelevant as to whether the officers had probable cause to believe that Reed was not a resident or did not have an invitation to be on the property. The government conceded this point at oral argument.

Fifth, the fact that Reed started to walk away when the officers approached may raise a suspicion that he was engaged in any one of a multitude of improper activities, but is not particularly probative as to whether Reed was privileged to be on the property. In any event, both officers

the overwhelming evidence in *Strickland*, the detectives had probable cause to believe that Strickland had engaged in a drug transaction. Because of that, they did not need to dispel all innocent explanations for the meeting between Strickland and Haggard before arresting Strickland. The officers in the case at hand, however, never had probable cause to arrest Reed for criminal trespass in the first place.

To explain the difference another way, let us assume that BMHA's apartment manager had informed the officers that Reed was trespassing. The officers would then have had probable cause to arrest Reed for criminal trespass. If, after arrest, Reed had argued that the officers lacked probable cause to arrest because they failed to inquire as to whether he was invited onto the property by a tenant, his argument would fail. At that point, like in *Strickland*, the officers would have had probable cause to arrest and would not have had to dispel every innocent explanation. Those, however, are not the facts of the present case.

The trespass ordinance in the case before us, like the ones in *Blair*, *Jones*, and *In re Jason Allen D.*, provides that a person must enter or remain on another's property *without privilege*. *See Ohio v. Clelland*, 615 N.E.2d 276, 287 (Ohio Ct. App. 1992) ("The concept of privilege has been broadly construed, and the state has been required to prove lack of privilege."). The majority concludes that the following facts establish probable cause for Reed's arrest for criminal trespass: (1) Reed had been given a prior warning not to enter the BMHA property by Officer Thompson, (2) Reed was observed on the BMHA property, (3) Reed was not a resident of the BMHA housing project, (4) there were twenty-six "No Trespassing" signs posted throughout the BMHA property, and (5) Reed walked away when the officers approached. For the reasons set forth below, I do not believe that any of the five factors that the majority relies upon justify the conclusion that the officers had probable cause to believe that Reed was on BMHA's property without privilege at the time of his arrest.

with trespassers and drug dealers in the parking area. He asked for police assistance. Shortly thereafter, a man named Jones was seen "hanging out" in the parking lot and was arrested by the Richmond police for criminal trespass. The search incident to the arrest uncovered heroin. In ordering the heroin suppressed, the Virginia Court of Appeals held as follows:

> Jones's mere presence with another man on the premises at four o'clock in the afternoon near an automobile parked on a street by an apartment complex was insufficient to establish probable cause to believe that Jones was neither a resident of the apartment complex nor legitimately upon the premises at the invitation of a resident. The officer's observation permitted only a bare suspicion. Indeed, the officer's assertion that Jones and the other man were "hanging out" did not add sufficient information to raise his suspicion of trespassing to probable cause.

*Id*. at 191.

Finally, in a case where the facts were much more compelling for the state than the ones at bar, the Maryland Court of Special Appeals reversed the appellant's trespass conviction, holding as follows:

> Officer Custead's mere observation of Jason "hanging out" on the sidewalk at the housing project two hours after an earlier and arguably invalid arrest for trespassing was insufficient to establish probable cause that Jason was a criminal trespasser. We reiterate that, in evaluating probable cause, we must relate what the officer knew about the circumstances of the arrest to the elements of the offense that the officer believed was being or had been committed. Here, appellant was arrested for trespassing, not for loitering. Thus, the fact that appellant was "hanging out" on the property provides very little guidance as to whether Officer Custead had probable cause to believe appellant was a trespasser. . . . For the purpose of analyzing probable

cause, we review what Officer Custead knew when he sought to arrest Jason for trespassing: 1) Jason was on Sagner property; 2) Jason was not a resident; 3) Jason had received a no-trespassing notice; 4) Jason had been arrested less than two hours earlier for trespassing at Sagner, although Jason was not on Sagner property when the first arrest occurred. Yet, Officer Custead's own knowledge about the questionable validity of the earlier arrest diffuses the import of Jason's later reappearance on the property. Further, although the officer saw appellant with a group of people, he conceded that he had no information about Jason's relationship to the persons who were with him, no knowledge as to whether any of the persons with Jason resided at Sagner, nor did the officer inquire of Jason or the others about Jason's presence at Sagner. *As in Blair and Jones, Officer Custead ignored the possibility that appellant was at Sagner at the invitation of an authorized resident. Like Blair and Jones, we conclude that, on these facts, Officer Custead did not have probable cause to make an arrest.*

*In re Jason Allen D.*, 733 A.2d 351, 371-72 (Md. Ct. Spec. App. 1999) (citations and internal quotation marks omitted) (emphasis added).

All three of the above cases require that an officer have probable cause to believe that a person is on private property without privilege before making an arrest for criminal trespass. This is an appropriate requirement because there are only two elements to criminal trespass: (1) a person has to be on private property, and (2) he or she has to be there without privilege. *See* City of Hamilton, Ohio, Ordinance § 541.05. If police officers do not need probable cause to believe that a suspect lacks a legitimate reason for being on private property before making an arrest for criminal trespass, then they could legally arrest and search anyone they see on private property. Such is clearly not the law.

Instead of addressing or attempting to distinguish *Jones* and *In re Jason Allen D.*, which deal specifically with the issue at

hand, the majority cites and relies heavily upon general language from *United States v. Strickland*, 144 F.3d 412 (6th Cir. 1998). In *Strickland*, the police used a man named Haggard, an indicted drug offender who was working as a police informant, to set up a drug transaction with a suspected dealer named Strickland. Haggard telephoned Strickland in the presence of police detectives. The detectives heard Haggard agree to a meeting with Strickland at 7:30 p.m. that evening at a convenience store called the Corner Market. Upon finishing his call with Strickland, Haggard informed the detectives that he had arranged to purchase cocaine from Strickland for $1,000. Haggard also explained that he and Strickland had a course of dealing where they would meet inside an automobile, talk for a few moments, and then exchange money for drugs. One of the detectives then gave Haggard $1,000 in marked bills. Shortly thereafter, the detectives, who had the Corner Market under surveillance, observed Haggard meeting Strickland at 7:30 p.m. at the Corner Market, Strickland getting into Haggard's car, the two men chatting, and Strickland leaving Haggard's vehicle a few minutes later. Strickland was then arrested and searched, uncovering the $1,000 of marked bills.

Claiming a lack of probable cause, Strickland filed a motion to suppress the evidence. The issue before this court was whether the police had probable cause to arrest Strickland for possession of cocaine with the intent to distribute when they had not actually seen the transaction take place in the car. In other words, Strickland argued that the detectives did not "know" that he had sold drugs to Haggard, and that there could be other innocent explanations for his meeting Haggard at the Corner Market. Based on the compelling circumstantial evidence summarized above, this court held that the detectives had probable cause to believe that Strickland had sold cocaine to Haggard, despite the possibility that there could have been an innocent explanation for the meeting between them.

I fully agree with the result in *Strickland*, but find its fact situation a world apart from that in the present case. Based on