**Loretta L. ESTERS, Plaintiff–Appellant,**

v.

**James STEBERL, Individually and in his Official Capacity as Police Officer; Keith Middleton, Individually and in his Official Capacity as Police Chief; and City of Stanford Kentucky, Defendants–Appellees.**

Nos. 03–506, 03–5248.

United States Court of Appeals, Sixth Circuit.

March 2, 2004.

Bradley S. Guthrie, Harrodsburg, KY, for Plaintiff–Appellant.

Douglas L. McSwain, Bryan H. Beauman, Sturgill, Turner, Barker & Maloney, Lexington, KY, for Defendants–Appellees.

Before DAUGHTREY and COLE, Circuit Judges, and POLSTER,* District Judge.

PER CURIAM.

The plaintiff, Loretta Esters, brought this civil rights action under 42 U.S.C. § 1983, charging that her Fourth Amendment rights were violated when she was arrested without probable cause, became the victim of excessive force, and was subjected to malicious prosecution. These violations, she alleged, resulted from Officer James Steberl's decision to use pepper spray to break up a fight that Esters became embroiled in during a bingo game at a local American Legion Hall. She also sued the officer's supervisor, Police Chief Keith Middleton, and their employer, the City of Stanford. Kentucky. The district court granted summary judgment to the defendants on all claims. and the plaintiff now appeals. We find no basis on which to overturn the district court's order and affirm.

*FACTUAL AND PROCEDURAL BACKGROUND*

The record in this case indicates that on the night of the events in question, plaintiff Loretta Esters was working as a volunteer at the Ladies Auxiliary bingo game, which was held weekly at the American Legion Hall. Toward the end of the evening, someone trying to leave the building discovered that her car was blocked. Lucille Pemberton, the owner of the car, did not respond immediately to repeated requests to move the car. After being chastised for failing to move the car promptly, Pemberton started yelling and cursing at Kelly Blount, the bingo chairperson, who threatened to bar Pemberton from the building. Pemberton protested, and Blount agreed to let her to stay long enough to play the two or three games remaining that evening.

In the meantime, Stanford Police Officer James Steberl was dispatched to the American Legion Hall after the police received a 911 call about the dispute over the blocked car. When he arrived, Blount informed him that Pemberton had been angry and cursing and had been barred from the premises, but that she had refused to leave. Steberl spoke to Pemberton and arranged to have her sign for the lottery numbers that she had already purchased. He then returned to his patrol car. Inside the building, Pemberton approached the table where Esters was taking down the names of people who had pull-tab lottery numbers, shoving others out of her way as she progressed. When Pemberton reached the table, she and Esters exchanged heated words. Esters came around the table to confront Pemberton, and Pemberton hit Esters. Esters apparently responded in kind.

At this point, aware that some sort of commotion had begun inside, Steberl reentered the building, saying that he "ex-

* The Hon. Dan A. Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

pected that something like this would happen," and made his way through the crowd. At its center, he observed Pemberton and Esters engaged in a frenzied hair-pulling contest. Various women in the immediate vicinity were unsuccessfully trying to pull the two combatants apart. Without more, Steberl pulled out a cannister of pepper spray and aimed at the two women, spraying Esters and several others as well. The fracas broke up immediately.

With the fight over, Steberl handcuffed Pemberton and took her to his patrol car. When he returned and handcuffed Esters, several of the women tried to explain that Esters had not done anything to precipitate the fight. Steberl nevertheless drove both women to the regional jail, where Esters was cited for disorderly conduct and placed in detention until the next morning, at which time she was released on her own recognizance. When Esters later appeared in court on the citation, the county attorney offered to dismiss the action upon a stipulation of probable cause, but Esters declined the offer. A trial ensued, and after deliberating for less than ten minutes, the jury acquitted Esters on the disorderly conduct charge.

Esters subsequently filed a § 1983 complaint against Steberl and Keith Middleton, the Chief of the Stanford City Police Department, in their individual and official capacities, and against the City of Stanford, claiming she had been arrested without probable cause and subjected to excessive force, in violation of her Fourth Amendment rights. She also asserted state law claims for assault and battery, malicious prosecution, and intentional infliction of emotional distress. The defendants raised the affirmative defense of qualified immunity and, after discovery, moved for summary judgment. The plaintiff also filed a motion for summary judgment, on the issues of qualified immunity defense and Steberl's liability.

The district court granted the defendants' motion for summary judgment on all claims and denied all other pending motions as moot. The defendants then moved for attorneys' fees and expenses, but that motion was denied. The plaintiff now appeals the grant of summary judgment, and the defendants cross-appeal the denial of attorneys' fees and costs.

## ANALYSIS

At the core of the plaintiff's Fourth Amendment claims is her contention that she was arrested without probable cause. Indeed, at oral argument in this appeal, counsel for the plaintiff conceded that if Loretta Esters's arrest was lawful, her claims of excessive force and malicious prosecution could not be maintained. But counsel contended that defendant Steberl lacked probable cause because "the only reason given for the plaintiff's arrest was her involvement in a fight." Moreover, the argument goes, Steberl should have known that the fight was entirely the fault of Pemberton, who had been the cause of trouble just a short time before the fight actually broke out. We conclude, however, that this theory ascribes too much knowledge to Steberl, who, upon entering the building, could see only that the two women were equally involved in combat. The need to act quickly was apparent, and he chose to act in a manner that he thought would restore order, without harming anyone on the scene. As the district court noted, the use of pepper spray is not unreasonable *per se*, and the plaintiff concedes that her unreasonable force claim is based on the argument that *any* force used to effect an arrest in the absence of probable cause is, by definition, "excessive" for Fourth Amendment purposes.

Without speaking to the validity of that contention, we agree with the district court's determination that the officer had probable cause to arrest in this instance. As the district court put it:

> [P]laintiff's charges are ill-founded. Does plaintiff really mean to say that Officer Steberl was without probable cause to arrest a woman who, by her own admission, was "locked together [with her combatant] with their hands in one another's hair pulling at each other"? Indeed, the statutory violation for which Officer Steberl arrested plaintiff—disorderly conduct—*specifically references "fighting or ... violent, tumultuous or threatening behavior."* Plaintiff, it would seem, would have Officer Steberl conduct an on-the-spot judicial proceeding. [T]his, however, is decidedly *not* his function. *See United States v. Reed,* 220 F.3d 476 (6th Cir. 2000).

In granting summary judgment to the defendants, the district court also relied on our holding in *Donovan v. Thames,* 105 F.3d 291, 298 (6th Cir.1997) (internal citations omitted), noting that "probable cause to effectuate an arrest exists if, at the moment of arrest, 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [person subject to arrest] had committed or was committing an offense.'" The court also pointed out, quoting *Kostrzewa v. City of Troy,* 247 F.3d 633, 639 (6th Cir.2001) (internal citations omitted), that "probable cause must be assessed 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"

It is true that in determining whether there is probable cause to make an arrest, an officer must consider the "totality of the circumstances" and cannot "look only at the evidence of guilt while ignoring all exculpatory evidence." *Gardenhire v. Schubert,* 205 F.3d 303, 318 (6th Cir.2000). But even given Steberl's knowledge that Pemberton had previously been aggressive and his suspicion that more trouble might be brewing, his actions with regard to Esters, who appeared to be equally engaged in disorderly conduct in the midst of a large crowd of people, cannot be said to be unreasonable under all the circumstances.

## CONCLUSION

For the reasons set out above, we conclude that the district court was correct in granting summary judgment in favor of the defendants, and we therefore AFFIRM the district court's judgment in all respects, including the court's conclusion that an award of attorneys' fees is not justified on this record.