NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0392n.06

Case No. 17-2199

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 06, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CRAIG LANG, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| CITY OF KALAMAZOO, et al., | ) | |
| | ) | |
| Defendants-Appellees. | ) | OPINION |

Before: BATCHELDER and CLAY, Circuit Judges; SARGUS, Chief District Judge.[*]

**SARGUS, Chief District Judge.** The police were called when Plaintiff-Appellant Craig Lang and some of his relatives were involved in a racially charged altercation with their neighbors. Kalamazoo Public Safety Officers arrived at the scene and arrested Lang and three of his relatives. Lang was charged with assault and battery. The charges were later dismissed, and Lang brought this lawsuit against the City of Kalamazoo and the officers involved in his arrest. Because the officers did not violate Michigan law or Lang's constitutional rights, we **AFFIRM** the district court's judgment in their favor.

---

[*] The Honorable Edmund A. Sargus, Jr., Chief United States District Judge for the Southern District of Ohio, sitting by designation.

**I.**

A.    **The Altercation**

Craig Lang was at his sister's house on the afternoon of July 1, 2013, when he and some of his relatives were involved in an altercation with their neighbors. Kalamazoo Public Safety Officers arrived and separated Lang and his relatives from the neighbors. After separating the groups, the officers spoke with the neighbors. Two of the neighbors, Shondale Pritchett and Ronnie Robeson, told the officers about a simmering dispute between the residents that culminated in Robeson being called a "nigger" and Lang kicking Robeson in the chest. (R. 84-15 at PageID 847; Denharder Video at 3:52 p.m. to 4:03 p.m.; Schipper Video at 3:49 p.m. to 3:58 p.m.)

Based on the officers' conversations with Pritchett and Robeson, Defendants Stacey Geik, Matthew Elzinga, and Jon Schipper approached Lang and informed him that he was under arrest. Geik handcuffed Lang. Lang testified in his deposition that Geik clamped the handcuff on his right forearm to the last notch, causing Lang's hand to feel like it was on fire. Lang was screaming from the pain and complaining about the tightness. In response, Geik attempted to loosen the handcuffs. Geik failed in this initial effort though and, according to Lang, only managed to scratch him, leaving fingernail marks "everywhere" and causing Lang to bleed. (R. 84-2 at PageID 483.) Failing to loosen the handcuffs, Geik then walked Lang to the hood of a nearby van. They reached the van and, according to Lang, Geik grabbed him by the back of the shirt and neck and slammed him onto the hood, causing Lang's face to hit the van. Lang continued complaining about the tightness of the handcuffs as Geik tried again to loosen them, which he eventually did.

After Geik's handcuffs had been loosened, the officers escorted Lang to a squad car and transported him to the Kalamazoo Department of Public Safety (KDPS). Lang was later transferred to the sheriff's department and eventually released around midnight. Following his release, Lang

went to the hospital where he complained of "right hand pain and numbness." (R. 84-2 at PageID 484; R. 84-3 at PageID 492.)

Lang was charged with assault and battery. Those charges were later dismissed though, and this case followed.

## B.    Procedural Background

Alleging violations of their constitutional rights, Lang and several of his relatives sued the City of Kalamazoo and the officers involved in their arrest—Jon Schipper, Matthew Elzinga, Kelly Pittelkow, Charles Dahlinger, Lindsey Denharder, Gerald Bentley, Stacey Geik, John Resseguie, John Hurst, Anthony Morgan, and Paula Hensley. Lang later dismissed his claims against Pittelkow, Bentley, Resseguie, Hurst, Morgan, Hensley, and the City of Kalamazoo. Lang brought five claims: (1) excessive force; (2) illegal search and seizure; (3) malicious prosecution; (4) municipal liability; and (5) false arrest and false imprisonment.

In her June 30, 2017 Report and Recommendation, the magistrate judge recommended that the district court grant Defendants' Motion for Summary Judgment. Noting that Lang's Complaint only contained allegations against Resseguie—who was no longer a party to the case—the magistrate judge recommended that the district court dismiss Lang's false arrest and false imprisonment, illegal search and seizure, and excessive force claims. And to the extent that Lang's Complaint could be interpreted as asserting claims against Defendants other than Resseguie, the magistrate judge recommended that the district court grant summary judgment in Defendants' favor. Specifically, the magistrate judge concluded that Lang's false arrest and false imprisonment, illegal search and seizure, and malicious prosecution claims failed because the officers had probable cause to arrest Lang.

Lang objected to the Report and Recommendation. On September 5, 2017, the district court denied Lang's objections, approved and adopted the magistrate judge's recommendations, and granted summary judgment to Defendants. The district court concurred with the magistrate judge that Lang's claims should be dismissed for his failure to adequately plead them in his Complaint. And the district court also agreed with the magistrate judge that the officers had probable cause to arrest Lang.

Lang now appeals the district court's decision. He argues that the district court erred in dismissing his claims based on their purported pleading inadequacies. Lang also contends that the district court erred in its determination of the merits of his claims and in its grant of summary judgment to Defendants.

Because we conclude that Lang's claims fail on their merits, we need not decide whether the district court erred in dismissing his claims for being inadequately pleaded.

## II.

### A.    Standard of Review

This Court reviews a district court's grant of summary judgment de novo. *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013). The Court applies the same standard as the district court but may affirm the judgment below on any grounds supported by the record, even if they are different from those relied upon by the district court. *Id.*; *Kennedy v. Superior Printing Co.*, 215 F.3d 650, 655 (6th Cir. 2000).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether to grant summary judgment, this Court views the "evidence in the light most favorable to the nonmoving party." *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir.

2003). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis deleted). A genuine issue of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

**B.      Section 1983 Claims**

Lang brings most of his claims under 42 U.S.C. § 1983, which provides a remedy for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" with respect to actions taken by persons acting "under color of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. To prevail on a claim brought under § 1983, a plaintiff must prove that he was deprived of a right secured by the Constitution or laws of the United States and that the deprivation was caused by a person acting under color of law. *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015).

**1.      Excessive Force**

Lang argues that the district court erred in dismissing his excessive force claim. He contends that Defendant Geik used excessive force when he (a) scratched Lang and allegedly slammed him onto the hood of a van and (b) handcuffed Lang too tightly. We address each theory in turn.

**a.      Scratch and Slam**

Excessive force claims are analyzed under the Fourth Amendment's reasonableness standard. *Slusher v. Carson*, 540 F.3d 449, 454 (6th Cir. 2008). An excessive force claim will survive summary judgment if the plaintiff produces sufficient evidence to create a genuine issue of material fact that (1) he was subjected to a seizure within the meaning of the Fourth Amendment

and (2) the seizure was unreasonable. *See id.* "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The standard is objective and does not take into account the underlying intent or motivation of the officer. *Slusher*, 540 F.3d at 455.

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 455 (quoting *Graham*, 490 U.S. at 396). Because the test of reasonableness under the Fourth Amendment "is not capable of precise definition or mechanical application," the court must consider all the facts and circumstances of each particular case. *Graham*, 490 U.S. at 396 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). Among other relevant factors, the court should consider (i) the severity of the crime at issue, (ii) whether the suspect posed an immediate threat to the safety of the officers or others, and (iii) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Id.*

Although Lang claims that Geik slammed him onto the hood of the van, the video of the incident recorded by Defendant Schipper's dash camera contradicts this assertion. The video shows Lang in handcuffs being escorted by Geik toward a van parked in the street. Geik and Lang stop in front of the van's hood. Lang then slowly leans his torso onto the hood as Geik appears to press on Lang's upper back.

The Court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party when considering a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But where there is "a videotape capturing the

events in question," the Court must "view[] the facts in the light depicted by the videotape." *Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012) (quoting *Scott v. Harris*, 550 U.S. 372, 378–81 (2007)). Viewing the facts here through the lens of the dash camera video, the Court finds that no reasonable jury could conclude that Geik slammed Lang into the hood of the van.

The scratch and slam portion of Lang's excessive force claim therefore hinges on Lang's assertion that Geik used excessive force when he scratched him. The dash camera videos of Lang's arrest are not detailed enough to show whether Geik scratched Lang. Geik testified that Lang scraped his hands on a porch railing during the altercation with Robeson. Lang has acknowledged that he cut his left hand on the railing. But he also testified that he "had fingernail marks everywhere" from Geik trying to adjust the handcuffs. (R. 84-2 at PageID 483.) Viewing the evidence in the light most favorable to Lang, we assume that Geik scratched Lang. *See Himmel*, 342 F.3d at 598.

In support of his excessive force claim, Lang notes that he was compliant when Geik scratched him. The government has a significant interest in ensuring the safety of officers and others. *See Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 404–05 (6th Cir. 2009). But as Lang correctly notes, this interest typically does not justify the use of force on an arrestee after he no longer poses a threat. *See id.*

The Court's analysis does not end here though. Lang's argument overlooks the government's interest in *his* safety. *Cf. Reed v. City of Memphis, Tenn.*, -- F. App'x --, 2018 WL 2437205, at *5 (6th Cir. 2018) (highlighting the government's "great" interest in detainee safety). Lang complained to the officers about the tightness of the handcuffs and was screaming from the pain. The pain from the handcuffs, Lang testified, was "unbelievable"; his hand felt like it "was on fire, like he had a torch on it." (R. 84-2 at PageID 483.) To address Lang's complaints and

alleviate his pain, Geik made two attempts at loosening the handcuffs. In the process, Geik scratched Lang.

Balancing Lang's Fourth Amendment rights against the governmental interests here, we find that no reasonable jury could conclude that Geik used unreasonable force when he scratched Lang while adjusting the handcuffs. When Lang complained about the tightness of the handcuffs, Geik had two options: he could address Lang's complaints or he could ignore them. Geik rightly chose to address them. And although, ideally, Geik would have loosened the handcuffs without scratching Lang, Geik was not operating in an ideal world. That Lang suffered minor scratches as Geik attempted to alleviate Lang's considerable pain caused by the tight handcuffs does not render Geik's action unreasonable or make it an excessive use of force. The district court did not err in dismissing this portion of Lang's excessive force claim.

### b. Tight Handcuffing

An excessive force claim involving unduly tight handcuffing will survive summary judgment if the plaintiff produces sufficient evidence to create a genuine issue of material fact that (1) he complained that the handcuffs were too tight, (2) the officer ignored those complaints, and (3) he experienced some physical injury from the handcuffing. *Baynes v. Cleland*, 799 F.3d 600, 608 (6th Cir. 2015).

Given that Lang has not produced any evidence showing that Geik ignored his complaints about the tightness of the handcuffs, the district court properly dismissed the handcuffing portion of Lang's excessive force claim. *See Vance v. Wade*, 546 F.3d 774, 783 (6th Cir. 2008) (affirming the grant of summary judgment to the defendants on a tight handcuffing claim where the testimony showed that the officer promptly responded to the plaintiff's complaints). Lang avers that Geik was initially unable to loosen the handcuffs and therefore left them on even though they were

hurting Lang. But even this argument acknowledges that Geik did not ignore Lang's complaint. As Lang admitted in his deposition, Geik attempted, and failed, to loosen the handcuffs after Lang complained about their tightness. (R. 84-2 at PageID 483 ("A. And he said, hold on, let me unlock it, loosen it, it's double locked.").) And although Geik failed to loosen the handcuffs on his first attempt, he successfully loosened them moments later, as Lang also admitted in his deposition. (*Id.* ("Q. Okay. Now, he eventually got them loose?  A. Yes.").)

The district court did not err in dismissing Lang's excessive force claim.

**2.      False Arrest and Illegal Search and Seizure**

Lang next contends that the district court erred in granting summary judgment to Defendants on his false arrest and illegal search and seizure claims.

For these claims to survive summary judgment, Lang must produce sufficient evidence to create a genuine issue of material fact that he was arrested without probable cause. *See Young v. Owens*, 577 F. App'x 410, 413 (6th Cir. 2014); *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010). Probable cause to justify an arrest exists if, "at th[e] moment [of the arrest,] the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [arrestee] had committed or was committing an offense." *Wolfe v. Perry*, 412 F.3d 707, 716–17 (6th Cir. 2005) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Courts determine the existence of probable cause through the lens "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

Unless there is an apparent reason for the officer to discredit the witness, "[a]n eye witness's statement that he or she saw a crime committed or was the victim of a crime is generally

sufficient to establish probable cause." *United States v. Shaw*, 464 F.3d 615, 623 (6th Cir. 2006); *see Courtwright v. City of Battle Creek*, 839 F. 3d 513, 521–22 (6th Cir. 2016).

After speaking with Pritchett, Robeson, and Felicia Williams (Robeson's fiancée), the officers arrested Lang for assault and battery. Under Michigan law, an assault is "an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." *Grawey v. Drury*, 567 F.3d 302, 315 (6th Cir. 2009) (quoting *People v. Nickens*, 685 N.W.2d 657, 661 (Mich. 2004)). A battery is "an unintentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Id.* (quoting *Nickens*, 685 N.W.2d at 661).

Both Pritchett and Robeson told the officers that Lang kicked Robeson in the chest. Geik found Robeson's statement to be credible and corroborated by the other witnesses. And Geik found Pritchett to be a "voice of reason" and "more of a witness" than a participant in the altercation. (R. 84-15 at PageID 847, 854.)

Lang argues that the officers lacked probable cause because they made no effort to obtain his side of the story or look at the totality of the circumstances before arresting him. In support of this argument, Lang cites *Rothhaupt v. Maiden*, 144 F. App'x 465, 469–70 (6th Cir. 2005), an unpublished decision in which this Court found that a sheriff's deputy lacked probable cause to make an arrest where he relied, without any further investigation, on the assertions of an interested party to a contentious dispute.

Probable cause determinations "involve an examination of all [the] facts and circumstances within an officer's knowledge at the time of an arrest." *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999) (emphasis deleted). Thus, if the officer discovers evidence favorable to the accused in the course of an investigation, the officer "cannot simply turn a blind eye" to that

evidence. *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015) (quoting *Ahlers v. Schebil*, 188 F.3d 365, 372 (6th Cir. 1999)). But as this Court has repeatedly stated, officers are not obligated to conduct an extensive investigation or rule out every possible explanation other than a suspect's illegal conduct before making a warrantless arrest. *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007); *United States v. Reed*, 220 F.3d 476, 478 (6th Cir. 2000). And "[o]nce a police officer *has* sufficient probable cause to arrest, he need not investigate further." *Klein v. Long*, 275 F.3d 544, 551 (6th Cir. 2001). The officers here did not conduct an extensive investigation or interview everyone involved in the altercation. There is no requirement in this Circuit though that they do so before making an arrest.

And as to *Rothhaupt*, this case differs in a critical way—the officers did not arrest Lang based on the statement of one active participant in the altercation. In addition to speaking to Robeson, the officers also spoke with Pritchett, an individual who even by Lang's admission repeatedly attempted to deescalate the altercation between the feuding families.

Lang next contends that the officers lacked probable cause because they were biased against him. But the officers' purported bias is irrelevant. *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988). Courts use an objective standard to determine the existence of probable cause. *Id.* If the circumstances, viewed objectively, support a finding of probable cause, the arrest is proper, irrespective of the officer's actual motives. *Id.*

Lang also suggests that there was no probable cause to arrest him because he was acting in defense of his niece when he confronted Robeson. "[W]here a reasonable police officer would conclusively know that [a suspect's] behavior is protected by a legally cognizable affirmative defense, that officer lacks a legal foundation to arrest that person for that behavior." *Painter v. Robertson*, 185 F.3d 557, 571 & n.21 (6th Cir. 1999) ("[A] peace officer, in assessing probable

cause to effect an arrest, may not ignore information known to him which proves that the suspect is protected by an affirmative legal justification for his suspected criminal actions.").

Here, however, Lang has not argued, and we see no basis to conclude, that a reasonable officer would have conclusively known that Lang's behavior was protected by a legally cognizable affirmative defense. Critically, the officers did not know Lang's reasons for confronting Robeson until after they had handcuffed and arrested him. And even after Lang informed the officers that he had "put his foot up to stop" Robeson, his cursory explanation was insufficient to create a genuine issue of material fact as to whether a reasonable officer would have conclusively known that he was acting in defense of his niece.[1] (R. 84-15; *see also* Schipper Video at 4:00:53 p.m. to 4:01:34 p.m.)

To arrest Lang, the officers needed reasonably trustworthy information sufficient to warrant a prudent person in believing that Lang assaulted and battered Robeson. *See Wolfe*, 412 F.3d at 717, 719. Taken together, Pritchett's and Robeson's statements fulfilled that requirement. *See Shaw*, 464 F.3d at 623. Because no reasonable jury could conclude that the officers lacked probable cause to arrest Lang, the district court properly granted summary judgment to Defendants on the false arrest and illegal search and seizure claims.

### 3. Malicious Prosecution

Lang also avers that the district court erred in granting summary judgment to Defendants on his malicious prosecution claim.

---

[1] Defense of others has four elements under Michigan law: "(1) the defendant honestly and reasonably believed there was danger; (2) the danger amounted to serious bodily harm or death; (3) the defendant's actions at the time were reasonably necessary for . . . defense of others; and (4) the defendant was not the initial aggressor." *People v. Escalona-Martinez*, No. 283067, 2009 WL 30463, at *1 (Mich. Ct. App. Jan. 6, 2009).

This claim survives summary judgment if Lang can produce sufficient evidence to create a genuine issue of material fact that "(1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Webb*, 789 F.3d at 659.

Lang has failed to show that Defendants made, influenced, or participated in the decision to prosecute him. Lang argues that Geik "did more than passively or neutrally participate in the decision to prosecute." (Appellant Br. at 36.) First, Lang points to Geik's testimony that he had significant involvement in determining what charges should be brought against Plaintiffs. However, the decision to press certain charges is different than the decision to prosecute. And Geik did not testify that he was involved in the decision to prosecute. Second, Lang argues that Geik included statements in his incident report regarding Plaintiffs' long history with the KDPS that "would clearly influence the decision to prosecute." (*Id.*) However, this Circuit's case law "is absolutely clear . . . that an officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's *truthful* materials." *Sykes*, 625 F.3d at 314. Lang does not suggest that anything in Geik's report was untruthful.

Further, there was probable cause for the criminal prosecution. The officers had probable cause to arrest Lang for assault and battery. Thus, barring the discovery of exculpatory evidence or information undermining the initial probable cause determination sometime between when Lang was arrested and when he was charged, there also would have been probable cause to prosecute Lang for those crimes. *Cf. Sykes*, 625 F.3d at 310–11 (When addressing a malicious prosecution

claim, "we must consider not only whether the Defendants had probable cause to arrest the Plaintiffs but also whether probable cause existed to initiate the criminal proceeding against the Plaintiffs.").

Lang has not pointed to any subsequently discovered information that would impeach Pritchett's or Robeson's credibility or undermine their statements. Nor has Lang argued that the officers discovered exculpatory evidence after his arrest.

Given that no reasonable jury could conclude that the officers made, influenced, or participated in the decision to prosecute or that there was a lack of probable cause to prosecute Lang, the district court did not err in granting summary judgment to Defendants on Lang's malicious prosecution claim.

## C.     False Arrest and False Imprisonment Under Michigan Law

Finally, although somewhat unclear from the briefing, Lang appears to bring false arrest and false imprisonment claims under Michigan law.

For his state law false arrest claim to survive summary judgment, Lang must produce sufficient evidence to create a genuine issue of material fact that the officers "participated in an illegal and unjustified arrest, and that [they] lacked probable cause to do so." *Bletz v. Gribble*, 641 F.3d 743, 758 (6th Cir. 2011) (quoting *Walsh v. Taylor*, 689 N.W.2d 506, 513 (Mich. Ct. App. 2004)). For his false imprisonment claim to survive summary judgment, Lang must produce sufficient evidence showing that (i) the officers committed an act with the intention of confining him, (ii) the act directly or indirectly resulted in his confinement, (iii) he was conscious of his confinement, and (iv) there was no probable cause for the confinement. *See id.* (citing *Walsh*, 689 N.W.2d at 514).

Under Michigan law, "[p]robable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Hinchman v. Moore*, 312 F.3d 198, 204 (6th Cir. 2002) (quoting *People v. Champion*, 549 N.W.2d 849, 860 (Mich. 1996)). This standard is, as we have stated previously, essentially the same as the standard for probable cause under federal law. *Id.*

For the same reasons we found under federal law that no reasonable jury could conclude that the officers lacked probable cause to arrest Lang, we make the same finding under Michigan law. The district court did not err in granting summary judgment to Defendants on Lang's false arrest and false imprisonment claims.

### III.

For these reasons, we **AFFIRM** the district court's judgment.

**ALICE M. BATCHELDER, Circuit Judge, concurring.**  I have no quarrel with the majority's merits analysis.  I write separately because I would not have reached the merits at all.

Craig Lang's complaint contained remarkably few factual allegations about his arrest.  And one of those few, the identity of the arresting officer, was incorrect.  Lang alleged in his complaint that it was Officer Resseguie who arrested and handcuffed Lang.  *See* R1, Complaint, at ¶ 17. Lang also alleged that he complained to Resseguie about the tightness of the handcuffs.  *See id.* at ¶ 18.  Discovery later showed that it was Officer Geik, not Resseguie, who had arrested and handcuffed Lang.  But by the time the defendants moved for summary judgment, Lang had dismissed Resseguie from the lawsuit and had not amended his complaint to allege that Geik—or anyone else for that matter—had arrested Lang and in doing so violated his constitutional rights. Without any factual allegations in Lang's complaint demonstrating that Geik or the other then-remaining defendants violated Lang's constitutional rights, they could not be held liable under 42 U.S.C. § 1983.  *Cf. Gilmore v Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–57 (1978)) ("Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983."). The district court did not err by dismissing Lang's claims after finding that he had not alleged any facts demonstrating that any of the then-remaining defendants had falsely arrested Lang, illegally searched or seized him, or subjected him to excessive force. *See Diamond v. City of Kalamazoo*, No. 1:15-cv-696, 2017 WL 3972046, at *3–5 (W.D. Mich. June 30, 2017), *adopted by* 2017 WL 3868807 (W.D. Mich. Sept. 5, 2017).

With respect to Lang's only other claim—malicious prosecution—Lang's complaint was also fatally deficient.  Lang alleged only that the "Defendants" satisfied the elements of malicious prosecution, but § 1983 plaintiffs may not "lump[] all defendants together in each claim and

provid[e] no factual basis to distinguish their conduct." *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012). Instead, they must "allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Id.* (citation omitted). This Lang did not do, at least concerning Geik. And although Lang alleged some facts possibly implicating Detective Dahlinger in a malicious-prosecution claim, Lang on appeal challenges only the district court's grant of summary judgment to Geik on Lang's malicious-prosecution claim. Any argument that the district court erred by granting summary judgment to Dahlinger on Lang's malicious-prosecution claim is therefore abandoned and unreviewable. *See Renkel v. United States*, 456 F.3d 640, 642 n.1 (6th Cir. 2006).

As master of his complaint, *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987), Lang was responsible for alleging, with particularity, facts that demonstrated what each defendant did to violate Lang's constitutional rights, *see Marcilis*, 693 F.3d at 596. Lang did not do so. And when Lang discovered his pleading error and dismissed Resseguie from the lawsuit, Lang was responsible for seeking leave to amend his complaint with sufficient factual allegations against Geik. *See* Fed. R. Civ. P. 15(a)(2). But Lang did not do that either. The district court correctly applied the Federal Rules of Civil Procedure, and I would affirm on that ground.