**NATIONAL SOLID WASTES MANAGEMENT ASSOCIATION,**
**Plaintiff–Appellee,**

v.

**George V. VOINOVICH, Governor, State of Ohio; et al., Defendants–Appellants.**

**No. 91–3466.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 15, 1991.

Decided March 4, 1992.

Rehearing and Rehearing En Banc
Denied May 14, 1992.

Michael Roy Szolosi, Kimberly A. Rye, Szolosi & Fitch, Columbus, Ohio, E. Barrett Prettyman, Jr., Jonathan L. Abram, Catherine J. LaCroix (argued and briefed), Ronald J. Wiltsie, II, Hogan & Hartson, Washington, D.C., for plaintiff-appellee.

Kathleen McDonald O'Malley, Office of Atty. Gen. of Ohio, E. Dennis Muchnicki, Asst. Atty. Gen. (briefed), Paula T. Cotter, Bryan F. Zima (briefed), Mary Kathleen Smith, Athan A. Vinolus, Office of Atty. Gen., Environmental Enforcement Section, Columbus, Ohio, Lee I. Fisher (argued), Cleveland, Ohio, Sarah E. Lynn, Columbus, Ohio, for defendants-appellants.

Stanley E. Cox (briefed), Asst. Atty. Gen., Sp. Prosecutions Div., Frankfort, Ky., for amicus curiae Com. of Ky.

Before: MARTIN and SUHRHEINRICH, Circuit Judges; and HILLMAN, Senior District Judge.[*]

HILLMAN, Senior District Judge.

This case involves a challenge under the Commerce Clause to the constitutionality of two Ohio statutes regulating the import of solid wastes generated in other states for disposal in Ohio. Ohio Rev.Code section 3734.57 establishes fees for disposal of solid wastes, charging a higher fee for wastes generated outside Ohio than for wastes generated within the state.[1] Ohio Rev.Code section 3734.131 requires that out-state generators and carriers consent to service before they may import waste into Ohio for disposal in Ohio landfills.

In the lower court, Ohio asserted that it had a compelling justification for its statutes. In support of Section 3734.57, the state argued that the high volume of hazardous substances in out-state waste and the cost of inspecting out-state waste for those substances justified the higher fees. In support of section 3734.131, the state argued that enforcement of laws against environmental crime justified the consent to service requirements. On plaintiff's motion for summary judgment, the United States District Court found both statutes unconstitutional. Without an evidentiary hearing, the District Judge concluded that the statutes discriminated against interstate commerce in violation of the Commerce Clause, and further, that no compelling reason justified the regulations. *District Court Op.*, 763 F.Supp. 244, 262, 264–65 and 267.

On appeal, Ohio argues that the questions of whether inspection costs and prosecution of environmental crime are compelling justifications for the challenged provisions are factual matters precluding dismissal on summary judgment. The State of Ohio also argues that the Supreme Court's interpretation of the Commerce Clause precludes dismissal of Ohio's asserted compelling justification without an evidentiary hearing. We agree, and remand the case to the District Court.

## I. SUMMARY JUDGMENT STANDARDS

■ This court reviews a grant of summary judgment de novo, applying the same test as the district court. *See Massey v.*

---

* The Honorable Douglas W. Hillman, Senior United States District Judge for the Western District of Michigan, sitting by designation.

1. The statute actually creates a three-tiered scheme of fees for waste disposal. Wastes generated within the same solid waste management district where they are disposed of are assessed a fee. Wastes generated within Ohio but outside the district are assessed a higher fee. Wastes generated outside the state of Ohio are assessed the highest fee.

*Exxon Corp.*, 942 F.2d 340, 342 (6th Cir. 1991); *EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990).

■ Summary judgment is appropriate only where the pleadings, discovery materials, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on summary judgment, the court should look beyond the pleadings to examine the record as a whole, drawing all justifiable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issues of material fact remain in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the moving party meets this burden, the party opposing the motion must come forward with specific facts to show a genuine issue for trial. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 153–54 (6th Cir.1990). To sustain this burden, the non-movant cannot rest on the pleadings. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Rather, the non-movant must come forward with specific facts or affidavits to support its claims and show the existence of a genuine, material issue in dispute. *Id.*

■ Here, Ohio argues that the District Court erred in granting summary judgment because a material issue of fact existed regarding Ohio's justification for the higher fees on waste imported from other states. The materiality of an issue of fact is evaluated based on the relevant substantive law, in this case the Commerce Clause jurisprudence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To resolve the summary judgment question, we must look first to the substantive law of the Commerce Clause to determine what facts are material. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989).

## II. THE COMMERCE CLAUSE

■ Article I, Section 8 of the Constitution provides that "The Congress shall have Power ... to regulate Commerce with foreign Nations, and among the several States and with the Indian Tribes." U.S. Const. Art. I, § 8. Commerce Clause jurisprudence as it relates to domestic commerce has focussed on maintaining an economic union in which states do not discriminate against commerce from other states in favor of their own citizens. *See e.g. Wyoming v. Oklahoma*, —— U.S. ——, ——, 112 S.Ct. 789, 799–801, 117 L.Ed.2d 1 (1992). At the same time, the Clause has been interpreted to allow states to regulate commerce to protect legitimate local interests when no less discriminatory alternative is available. *See e.g. H.P. Hood and Sons, Inc. v. Du Mond*, 336 U.S. 525, 535, 69 S.Ct. 657, 663, 93 L.Ed. 865 (1949) ("This court consistently has rebuffed attempts of states to advance their own commercial interests by curtailing the movement of articles of commerce, either into or out of the state, while generally supporting their right to impose even burdensome regulations in the interest of local health and safety."); *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

Supreme Court decisions concerning provisions similar to the Ohio statutes suggest that a state's justification for restricting the import of garbage is a material issue of fact under the Commerce Clause. The Supreme Court has specifically held that disposal of solid waste is a matter which comes under the scrutiny of the Commerce Clause. In *Philadelphia v. New Jersey*, 437 U.S. 617, 622, 98 S.Ct. 2531, 2534, 57 L.Ed.2d 475 (1978), the Court overturned a New Jersey law that prohibited import of solid or liquid waste which originated or was collected outside of New Jersey. The Court held that New Jersey's ban on the import of that garbage violated the Commerce Clause. *Id.*

The case at hand, however, is not controlled by the holding of *Philadelphia*. In

*Philadelphia,* the state conceded that the harms from in-state and out-state waste would be the same. *Id.* at 629, 98 S.Ct. at 2538. In the case before this court, Ohio argues that garbage generated outside of Ohio causes a greater risk of harm than garbage generated within the state. That greater risk of harm arises, Ohio contends, because out-state waste is more likely to contain hazardous waste. As a result, higher fees for disposal of out-state waste are justified in order to reimburse Ohio's larger inspection, enforcement, and clean-up costs caused by out-state waste. Similarly, Ohio argues consent to service is justified to effectively prosecute out-state shippers and generators of hazardous waste. Ohio's position is supported with affidavits. *See* discussion, part III, *infra.*

The Supreme Court recently found similar justifications to be compelling in a case where a Maine statute regulated incoming commerce to preserve and protect the state's natural resources. In *Maine v. Taylor,* 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110 (1986), the Court held that a Maine law forbidding importation of live baitfish did not violate the Commerce Clause because Maine had established sufficient compelling local reasons to ban importation of the fish. The Court applied the analysis of *Hughes v. Oklahoma,* 441 U.S. 322, 336, 99 S.Ct. 1727, 1736, 60 L.Ed.2d 250 (1979) and *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 353, 97 S.Ct. 2434, 2446, 53 L.Ed.2d 383 (1977), requiring that:

> [w]hen discrimination against commerce ... is demonstrated, the burden falls on the State to justify it both in terms of the local benefits flowing from the statute and the unavailability of non-discriminatory alternatives adequate to preserve the local interests at stake.

*Id.* After an evidentiary hearing, the District Court in *Taylor* ruled that Maine had justified its statute under this standard because the contaminated baitfish posed a drastic threat to Maine's ecology and because no less intrusive means existed for protecting the ecology short of an absolute ban. Thus, a state's justification for regulating the influx of potentially hazardous

waste and preserving its natural resources is a material issue of fact under the Commerce Clause.

## III. APPLICATION TO THE OHIO STATUTES

■ In the present case, the District Court should have applied the analysis of *Maine v. Taylor* and made a factual determination whether the state had proved a compelling justification for its statutes. Its grant of summary judgment for plaintiffs without such a finding constitutes error.

The District Court in analyzing *Maine v. Taylor* acknowledged that a situation could arise "when [a] statute discriminates against interstate commerce but for a compelling reason." *District Court Opinion,* at 260. The District Judge stated further that in such situations, "it is appropriate to engage in a balancing of interests." *Id.* We conclude that this is just such a case. The District Court, however, failed to hold an evidentiary hearing to balance these interests. Instead, as a matter of law, it struck down the Ohio statutes. The District Judge reasoned that Ohio's justification for the statutes was irrelevant because the statutes discriminated on their face against waste imported from other states. Such a conclusion ignores the analysis of *Maine v. Taylor.* We find that Ohio's showing in this case merits an evidentiary hearing at which Ohio would have an opportunity to demonstrate a compelling local reason for its statutes and to show that no less restrictive means are available to achieve the same ends.

On the record before us, Ohio has demonstrated the existence of a material issue of disputed fact which precludes summary judgment. *See, e.g.,* Affidavits of Duane Alan Snyder, Richard Sahli, David C. Strayer and William J. Strauch. Those affidavits allege that:

\* solid wastes generated outside Ohio but disposed of within the state at times contain hazardous waste which is improperly stored or identified. Improper classification of hazardous waste generally occurs at

the point where the waste was generated. *See, e.g.,* Strauch Affidavit, at 8.

\* out-state waste generators and carriers, in contrast to their in-state counterparts, cannot be inspected by Ohio authorities to insure proper classification of solid and hazardous waste. *See* Snyder affidavit.

\* Ohio is unable to recoup its costs for cleanup of hazardous waste generated outstate but disposed of in Ohio landfills. *See* Strayer and Sahli affidavits.

\* non-Ohioans who generate and transport hazardous waste into the state escape criminal prosecution for contaminating the Ohio environment because Ohio is unable to obtain jurisdiction over them. *See* Strauch Affidavit at 5–10.

The facts alleged in these affidavits, viewed in the light most favorable to Ohio as the non-moving party, create a material issue of disputed fact.

In response, plaintiff presents no affidavits or specific facts whatsoever to counter Ohio's argument that these financial and environmental problems justify the provisions of the challenged Ohio statutes. Granting the movant summary judgment on its claim while these relevant factual issues remain in dispute constituted error. It is questionable whether plaintiff met its initial burden of demonstrating the absence of material fact under *Celotex, supra.* Even assuming, *arguendo,* that plaintiff did meet that burden, summary judgment should have been denied because plaintiff failed to rebut or refute the state's affidavits. Those affidavits demonstrate that the environmental and financial problems which Ohio seeks to address by its statutes are at least partially attributable to the influx of hazardous waste from outside the state. The District Court's grant of summary judgment impermissibly denied Ohio the opportunity to prove that a compelling justification exists for its statutes. Consequently, the District Court's order of sum-

mary judgment was in error and we remand the case for further proceedings.

## IV. PROCEEDINGS ON REMAND

On remand, Ohio's statutes will remain subject to strict scrutiny. At the evidentiary hearing, the burden of proof will be on Ohio to demonstrate that its statutes serve a legitimate local purpose and that this purpose could not be served by other non-discriminatory means.[2] Ohio's "proffered justification for any local discrimination against interstate commerce must be subjected to the strictest scrutiny, [but] the empirical component of that scrutiny, like any other form of factfinding, is the basic responsibility of district courts, rather than appellate courts." *Taylor,* 477 U.S. at 144–45, 106 S.Ct. at 2450 (citations omitted).

For these reasons, we REVERSE the District Court order granting summary judgment and REMAND the case to that court for further proceedings consistent with this opinion.

---

**2.** Among the other alternatives the District Court should consider is the fee structure approved by this court in *Bill Kettlewell Excavating Inc. v. Michigan Dept. of Natural Resources,* 931 F.2d 413 (6th Cir.1991), *cert. granted sub nom. Fort Gratiot Landfill, Inc. v. Michigan*

*Dept. of Natural Resources,* —— U.S. ——, 112 S.Ct. 857, 116 L.Ed.2d 765 (1992). In that case, we upheld a Michigan statute allowing counties to refuse imports of solid waste generated outside the county regardless of whether that waste came from within or outside the relevant state.