RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0331p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

LINDA SLUSHER,

        *Plaintiff-Appellant,*

    *v.*

C. CARSON and T. TERRY, in their individual and
official capacities, and SHIAWASSEE COUNTY,

        *Defendants-Appellees.*

No. 07-1756

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-10746—Patrick J. Duggan, District Judge.

Argued: June 10, 2008

Decided and Filed: September 2, 2008

Before: BOGGS, Chief Judge; RYAN and COLE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Shawn C. Cabot, CHRISTOPHER TRAINOR & ASSOCIATES, White Lake,
Michigan, for Appellant. Jason David Kolkema, JOHNSON, ROSATI, LaBARGE, ASELTYNE
& FIELD, P.C., Lansing, Michigan, for Appellees. **ON BRIEF:** Christopher J. Trainor,
CHRISTOPHER TRAINOR & ASSOCIATES, White Lake, Michigan, for Appellant. Jason David
Kolkema, JOHNSON, ROSATI, LaBARGE, ASELTYNE & FIELD, P.C., Lansing, Michigan, for
Appellees.

    COLE, J., delivered the opinion of the court, in which BOGGS, C. J., joined. RYAN, J.
(p. 8), delivered a separate concurring opinion.

---

## OPINION

---

    COLE, Circuit Judge. This action arises from an incident that occurred on Plaintiff-
Appellant Linda Slusher's ("Slusher") property on May 13, 2004. Slusher argues that Defendants-
Appellees Michigan Deputies Cory Carson and Thomas Terry (collectively, along with Shiawassee
County, "Defendants") seized her in violation of her Fourth Amendment rights during the course
of the officers' visit to her property to aid in a neighbor's reclamation of property pursuant to a court

1

order. The United States District Court for the Eastern District of Michigan granted Defendants' motion for summary judgment on all of Slusher's claims. For the reasons below, we **AFFIRM**.

# I. BACKGROUND

## A. Alleged Facts

The facts, in the light most favorable to Slusher, are as follows. On May 13, 2004, Defendants Carson and Terry were dispatched to Dr. Leroy Waite's property in order to assist Waite in reclaiming certain personal property pursuant to a divorce judgment issued by the Shiawassee County Circuit Court. The divorce judgment included a finding that Waite's wife had hidden two tractors and some airplane parts that belonged to him, potentially on the property of Linda Slusher and her husband Benjamin. The court also issued a search order that entitled Waite to enter the Slushers' property, with the aid of peace officers—in this case, Carson and Terry—in order to reclaim the two tractors. After arriving at Waite's home, Carson and Terry reviewed the contents of the court order and proceeded, with Waite, to the Slushers' property. Upon their arrival, the deputies and Waite were met by Benjamin. Benjamin reviewed the court order and then left to retrieve the two tractors from barns on the property; Carson followed behind. While Benjamin was retrieving the tractors, Linda Slusher exited the home and Benjamin called out to the officers and asked that they allow Linda to read the court order as well.

While Slusher was reviewing the order, Terry and Waite were standing nearby. At some point, Waite asked Terry to accompany him to one of the barns so that he could look for the airplane parts. Overhearing this, Slusher stated that the order did not allow Waite to search the barns. This led to an argument between Slusher and Waite. A few minutes later, Carson approached Slusher, Waite, and Terry and asked Slusher to hand over the court order. Slusher stated that she had not finished reading the order. Carson replied that she had been given sufficient time to read the order and directed that she return it to him. As Carson reached for the order, Slusher retracted her hand holding the order. Slusher then asked if she could make a copy of the order inside her house; Carson stated that she could not. At this point, Carson made another attempt to retrieve the order, and in the process pulled her arm down with one hand and used his other hand to grab her right hand, which was holding the order. Slusher asserts that Carson "pressed his thumb into [her] hand, [her] palm, squeezed the back and twisted [her] fingers back and around," and that Slusher yelled out that Carson was gripping her "bad hand." Slusher claims that due to a preexisting condition called Multiple Enchodromatosis, also known as Ollier's Disease, Carson's actions caused her to lose the use of her right hand for several months, impaired the range of motion in her hand, and caused her to lose grip strength and fine motor skills.

A short while later, after Benjamin had driven the tractors onto Waite's property, Waite and the officers left the Slushers' property. Slusher applied ice to her right hand, took some pain medication, and had Benjamin bandage the hand. She then called 911 to report that she had been assaulted by an officer and wanted to file a report. Deputies Carson and Terry returned to the Slushers' property in response to this call. On viewing her bandaged hand, Slusher claims that the officers began laughing and that Terry told Slusher that they could arrest her for assaulting them. After the officers left, Slusher went to the emergency room for treatment of her injured hand.

The next day, Slusher attempted to file a complaint against Carson and Terry with the Shiawassee County Sheriff's department. Slusher says that she met with Sheriff Keith Kewish on May 20 to describe the incident and her injuries. She says that Kewish laughed at her, refused to take pictures of her injuries, threatened her with arrest, and would not allow her to make a report. Lieutenant David Kirk, the department's head of Internal Affairs, subsequently contacted Slusher by phone on May 24 and asked her to meet with him to make a statement regarding the incident. Slusher claims to have informed Kirk that, because she was concerned that criminal charges might

be filed against her, she would only meet with Kirk in the presence of an attorney. Slusher claims that Kirk refused to meet with her if she was accompanied by an attorney, and that as a result she and Kirk never met. Kirk subsequently prepared an investigatory report in which he concluded that the deputies "acted well within the use of force continuum guidelines for [the Sheriff's] Department."

## B. Procedural History

On February 17, 2006, Slusher filed the instant complaint against the Defendants. In her complaint, Slusher alleges against all Defendants: (1) a Fourth Amendment violation under under 42 U.S.C. § 1983 due to excessive force; (2) assault and battery in violation of Michigan law; and (3) gross negligence in violation of Michigan law. She additionally alleges a Fourth Amendment violation pursuant to § 1983 against Shiawassee County based on her allegations that the county failed to supervise and train officers regarding the use of force, failed to investigate complaints and discipline officers, and had an "unwritten policy or custom of discouraging citizen's complaints, or threatening to arrest citizen's [sic] who state their intention to file a complaint."

On March 14, 2007, Slusher filed a "Motion to Amend/Clarify Complaint," in which she sought to add a claim against Deputies Carson and Terry for conducting an illegal search of her property. On May 23, 2007, the district court denied Slusher's motion to amend her complaint, concluding both that the claim was futile because she failed to allege any clearly established constitutional violation and that granting of the motion would be unduly prejudicial given the timing of the motion. The district court also granted Defendants' motion for summary judgment. From this Judgment, Slusher appeals.

## II. STANDARD OF REVIEW

We review a district court's grant of a motion for summary judgment under a de novo standard. *Miller v. Admin. Office of the Courts*, 448 F.3d 887, 893 (6th Cir. 2006). A moving party is entitled to a grant of its motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c);[1] *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The burden is initially on the moving party to show that there is no dispute regarding any genuine issue of material fact, and this burden can be satisfied by demonstrating to the district court that there is no evidence underlying the non-moving party's case. *GMC v. Lanard Toys*, 468 F.3d 405, 412 (6th Cir. 2006). Once the moving party supports its motion for summary judgment, the opposing party must go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated. Fed. R. Civ. P. 56(e); *see also Nat'l Solid Wastes Mgmt. Ass'n v. Voinovich*, 959 F.2d 590, 592 (6th Cir. 1992).

In reviewing the record, we view the factual evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor. *See, e.g., Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006). Ultimately, the proper inquiry is whether the state of the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 251-52; *Stromback v. New Line Cinema*, 384 F.3d 283, 292 (6th Cir. 2004).

---

[1] At the time the district court issued its decision, the relevant portion of Rule 56(c) read: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law." We conclude that the outcome is the same under either standard.

### III.  ANALYSIS

**A. The § 1983 Claim for Use of Excessive Force**

In order to succeed on her § 1983 claim, Slusher must establish that a constitutional violation has occurred and that Defendants are not entitled to qualified immunity.  Qualified immunity is generally available for "government officials performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), and it is Slusher's burden to demonstrate that qualified immunity does not apply in this instance.  *See Ciminillo*, 434 F.3d at 466.  Because Defendants claim that they are entitled to qualified immunity, we first determine whether the deputies' actions were unconstitutional and next determine whether any such violation was "clearly established in a . . . particularized . . . sense," such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

1.  *Fourth Amendment Analysis*

We conclude that Slusher's excessive-force claim is properly analyzed under the Fourth Amendment.  "*[A]ll* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original).  For purposes of summary judgment, we must therefore determine whether Slusher has alleged facts that are sufficient to demonstrate a "seizure" within the meaning of the Fourth Amendment and, if so, whether any such seizure could be considered unreasonable by a jury.

The Supreme Court has made clear that "[a] 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or show of authority, in some way restrained the liberty of a citizen." *Graham*, 490 U.S. 386, 395 n.10 (1989) (alterations and quotations omitted); *see also Terry v. Ohio*, 392 U.S. 1, 16 (1968) ("[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person.").  Here, Defendants concede that Carson, as alleged by Slusher, grabbed Slusher's right hand,[2] but argue that such force does not constitute a seizure for Fourth Amendment purposes.  The district court agreed, concluding that Slusher had not demonstrated that she was "seized" for purposes of the Fourth Amendment because there was "no indication that Ms. Slusher was not free to walk away from and ignore the deputies."

We disagree.  As Justice Scalia explained for the majority in *California v. Hodari D.*, 499 U.S. 621, 624 (1991), "[f]rom the time of the founding to the present, the word 'seizure' has meant a 'taking possession,'" but that "[t]o constitute an arrest, however—the quintessential 'seizure of the person' under our Fourth Amendment jurisprudence—the mere grasping or application of physical force with lawful authority whether or not it succeeded in subduing the arrestee, was sufficient." *Id.* (citations omitted); *see also Adams v. City of Auburn Hills*, 336 F.3d 515, 519 (6th Cir. 2003) ("A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'" (quoting *Terry*, 392 U.S. at 19 n.16)).

In this instance, at a minimum, Slusher's liberty was restrained when Deputy Carson grabbed her right hand as she certainly was not "at liberty to ignore the police presence and go about [her]

---

[2]In his incident report, Carson indicated that at first he took hold of the paperwork in Slusher's hand and not her hand itself, and that he did not grab her hand until Slusher grabbed and twisted his wrist.

business." *Kaupp v. Texas*, 538 U.S. 626, 629 (2003) (concluding that a seizure takes place for purposes of the Fourth Amendment when "taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991)); *see also Hodari D.*, 499 U.S. at 625 ("[A]n arrest is effected by the slightest application of physical force.")  As the Supreme Court explained in *United States v. Mendenhall*:

> [A] person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.  Examples of circumstances that might indicate a seizure, *even where the person did not attempt to leave*, would be the threatening presence of several officers, the display of a weapon by an officer, *some physical touching of the person of the citizen*, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

446 U.S. 544, 554 (1980) (citations and footnote omitted) (emphases added); *see also, e.g.*, *United States v. Campbell*, 486 F.3d 949, 954 (6th Cir. 2007) (quoting *Mendenhall*, 446 U.S. at 554); *United States v. Montgomery*, 377 F.3d 582, 587 (6th Cir. 2004) (same); *United States v. Saari*, 272 F.3d 804, 808 (6th Cir. 2001) (same); *United States v. Peters*, 194 F.3d 692, 697 (6th Cir. 1999) (same).  Because a reasonable person would not feel free to disregard the authority of an officer, we conclude that Slusher has articulated facts that would allow a jury to conclude she was "seized" when she was physically grabbed by Carson.

### 2. *Reasonableness of the Seizure*

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quotations and citations omitted).  In making this determination, we use an "objective reasonableness" standard that does not include the underlying intent or motivation of the officer.  *Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004).  Relevant factors to consider in evaluating what level of force is reasonable include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.[3]  These factors are not an exhaustive list, and the ultimate inquiry is whether the seizure was reasonable under the "totality of the circumstances." *Ciminillo*, 434 F.3d at 467.

Slusher claims that Deputy Carson behaved unreasonably when he pulled down her arm and grabbed her hand.  Evaluating Carson's decision to use force from the perspective of an objective officer, *Dunigan*, 390 F.3d at 493, we disagree.  Taking the facts in the light most favorable to Slusher, she was, at a minimum, arguing with Carson and Waite and refusing to return the order.  The officers were aware that Waite believed he needed their help in reclaiming his tractors, as this could readily be inferred by Waite's decision to obtain a court order that provided for officer assistance.  Thus, once Slusher became agitated and pulled the order away from Carson, it was reasonable for the officers to conclude that a brief show of force might be necessary to ensure she complied with their orders.[4]

---

[3]In *Graham*, the Court explicitly stated that Fourth Amendment protection applies to "*all* claims that law enforcement officers have used excessive force," including arrests, investigatory stops, and "other 'seizure' of a free citizen." *Graham*, 490 U.S. at 395.

[4]That Slusher has Ollier's disease plays no role in this determination.  Slusher has presented no facts that suggest a reasonable officer would have been aware of her disorder.

Further, Slusher has presented no facts that would allow a jury to conclude that the officers used more force than was necessary. *See Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002). In determining whether force was excessive, we often must assess the actions of the plaintiff. *See id.*; *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994); *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988). In each of these cases, the defendant had ceased to fight back and we determined that the use of force was unreasonable given the subdued or neutralized state of the individual. For example, in *Phelps*, the alleged beating took place after the officer had tackled the handcuffed suspect and was sitting on top of him, 286 F.3d at 301, and, in *Adams*, witnesses testified that the suspect "was seated in the car, could not see, and was incapacitated." 31 F.3d at 384. Here, by way of contrast, Slusher was arguing with the officers and refusing to comply with their request that she return the court order to them. Although Slusher argues that her injuries were severe, she submits nothing to support a conclusion that the officers were aware that she was susceptible to the type of injury she alleges, or that the amount of force used was more than necessary to restrain her or the average individual momentarily. Because Slusher has not alleged facts that support a finding that the force used against her was unreasonable, summary judgment was properly granted as to this claim.[5]

Even if we had determined that the amount of force the officers applied in this instance constituted a violation of the Fourth Amendment, Defendants would still be entitled to qualified immunity because Slusher cannot demonstrate that the force used was clearly established as unconstitutional in a "particularized" sense, *Saucier*, 533 U.S. at 202, so that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* Here, any violation that might have occurred when Carson touched Slusher was not clearly established, as there is no precedent that would have alerted the officers that it is unconstitutional to use this amount of force to retrieve a court order during a reclamation of property. In such a case, qualified immunity would properly be applied "to protect officers from the sometimes hazy border between excessive and acceptable force." *Id.* at 206 (quotation and citation omitted); *accord Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

### B. The § 1983 Claim Against the County

Under § 1983, a municipality can only be held liable if the plaintiff demonstrates that the injury suffered was a direct result of the city's official policy or custom. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694-95 (1978); *Cummings v. City of Akron*, 418 F.3d 676, 684-85 (6th Cir. 2005) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). The inadequacy of police training only serves as a basis for § 1983 liability "where the failure to train amounts to *deliberate indifference* to the rights of persons with whom the police come into contact." *Harris*, 489 U.S. at 388 (emphasis added). "To establish deliberate indifference, the plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *St. John v. Hickey*, 411 F.3d 762, 776 (6th Cir. 2005) (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)); *see also Miller v. Calhoun County*, 408 F.3d 803, 816 (6th Cir. 2005) (concluding that, absent evidence of a "history of similar incidents" or notice, or evidence that the governmental entity's "failure to take meliorative action was deliberate," plaintiff's claim of municipal liability under § 1983 fails).

In this case, the district court correctly concluded that Slusher failed to make the required showing. Slusher presented no evidence that the county maintained policies or customs that would

---

[5]Slusher's brief includes an allegation that Terry grabbed Slusher's left arm. However, in her deposition testimony, Slusher stated that Terry "didn't do or say anything" and made no statement that would suggest that Terry used force. If we accept Slusher's allegation that Terry also grabbed her, despite her deposition testimony to the contrary, Terry's actions would not constitute excessive force for the same reasons that Carson's do not.

have caused her injury. Instead, she actually refers to evidence indicating that the county had policies in place that prohibit the use of excessive force and require its officials to explain the complaint procedure to citizens. To the extent that Slusher complains that the county's policies were deficient regarding investigations of citizen complaints, Slusher has alleged no injury stemming from any deficient investigation techniques, as all of her injuries stem from the Carson's alleged seizure and not anything that occurred after. Slusher likewise has alleged no facts that would support an allegation that the county had a policy of discouraging citizen complaints or minimizing the seriousness of such complaints. Because Slusher has not presented any facts that would allow a jury to support her claim, we conclude that the district court properly granted summary judgment as to this claim.

## C. Slusher's State Law Claims

The district court granted summary judgment to Defendants on each of Slusher's state law claims, determining that Michigan's Governmental Tort Liability Act ("GTLA") shielded the officers and the county from liability for the assault and battery claims and that Slusher could not demonstrate that any of the actions taken constituted gross negligence. *See Slusher v. Carson*, No. 06-10746 at 16-17 (E.D. Mich. May 23, 2007). We have carefully reviewed the entirety of the record, including Slusher's complaint, the applicable law and the parties' briefs, and we agree that summary judgment was appropriate.

## D. Slusher's Motion to Amend Her Complaint

It is not clear from the record that it would have been prejudicial for Defendants if Slusher had been allowed to amend her complaint. However, we agree with the district court's determination that the motion to amend the complaint would have been futile. *See Haverstick Enters, Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 995-96 (6th Cir. 1994) (denying motion to amend as futile where defendants would be entitled to qualified immunity). In her motion, Slusher argues that the officers conducted an illegal search when they entered her property pursuant to a state court order. Slusher's allegations do not demonstrate any constitutional violations. The officers accompanied Waite to the property pursuant to a valid state court judgment that gave them authority to enter the property to retrieve the tractors. The officers had a court order, Benjamin Slusher was allowed to review it, and Benjamin retrieved the tractors listed in the order. There is no allegation that Carson violated the order, or did anything without Benjamin's permission, when he followed Benjamin. Although Waite may have wanted the officers to search the property for airplane parts, Slusher's own testimony demonstrates that the officers did not in fact conduct such a search, and the only property searched for or seized was the property listed on the court order. Thus, we affirm the district court's denial of Slusher's motion to amend.

## IV. CONCLUSION

For the reasons above, we **AFFIRM** the district court's grant of summary judgment to Defendants.

--------------------

## CONCURRENCE

--------------------

RYAN, Circuit Judge, concurring. I concur in the result, but write separately because, as the District Court Judge Patrick Duggan correctly concluded, Ms. Slusher was not "seized" within the meaning of the Fourth Amendment. The test is whether, taking into account all the circumstances in which Ms. Slusher was involved, a reasonable person would have felt free to leave the scene throughout the encounter with the officers. *See Brendlin v. California*, 127 S. Ct. 2400, 2402 (2007). It seems clear to me that a reasonable person would have known he or she was free to walk away from the officers; not with the warrant papers, to be sure–but walk away, nevertheless. Ms. Slusher has never claimed that the search warrant papers were her property and there is not the slightest indication in the record that Ms. Slusher thought she was inhibited from leaving. The record is clear that the deputies did not want the warrant papers to be taken away from the area, and that they intended to retrieve them. Any brief restriction on Ms. Slusher's personal movement was incidental to her refusal to return the documents to the officers, and not to any purpose on the part of the officers to prevent Ms. Slusher from leaving.

As the Supreme Court has reminded us, "not every governmental interference with an individual's freedom of movement raises such constitutional concerns that there is a seizure of the person." *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 618 (1989). Simply because police officers makes physical contact with or incidentally restrain an individual, does that mean he or she is seized as contemplated by the Fourth Amendment. *See Lanman v. Hinson*, 529 F.3d 673, 681 (6th Cir. 2008).

The cases cited by the majority to support the conclusion that a Fourth Amendment seizure occurred all involve an officer's suspicion of criminality and some intent to investigate, restrain, or arrest the person claiming the illegal seizure. There are no such circumstances in this case. Here, the deputies gave no indication that they intended to limit Ms. Slusher's liberty to walk away; they wanted the papers, not Ms. Slusher. Unlike the cases cited by the majority, the officers in this case were not suspicious that Ms. Slusher was involved in any criminal activity and they were not investigating her.

I believe the district court properly looked to the Fourteenth Amendment as the basis for deciding whether Ms. Slusher's constitutional rights were violated, and correctly decided they were not.

That said, I concur in the result my colleagues reach, and in the judgment.