[Cite as *Parmelee v. Schnader*, 2018-Ohio-707.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| NANCY PARMELEE ET AL., | ) | |
| | ) | |
| PLAINTIFFS-APPELLANTS, | ) | |
| | ) | CASE NO. 17 MA 0026 |
| V. | ) | |
| | ) | OPINION |
| GENE SCHNADER ET AL., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from Court of Common
                               Pleas of Mahoning County, Ohio
                               Case No. 2015 CV 1919

JUDGMENT:                      Affirmed.

APPEARANCES:
For Plaintiffs-Appellants       Attorney Anthony Farris
                                Attorney Jennifer Ciccone
                                860 Boardman-Canfield Road, Suite 204
                                Youngstown, Ohio 44512

For Defendants-Appellees        Attorney Gregory Beck
                                Attorney Tonya Rogers
                                400 South Main Street
                                North Canton, Ohio 44720

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: February 22, 2018

DONOFRIO, J.

{¶1} Plaintiffs-appellants, Nancy Parmelee and Amy Sloan, appeal from a Mahoning County Common Pleas Court judgment granting summary judgment in favor of defendants-appellees, Steven Kotheimer, the Goshen Police District, and Goshen Township, and finding that appellees were entitled to qualified immunity.

{¶2} Appellant Nancy Parmelee is defendant Gene Schnader's ex-wife. Appellant Amy Sloan is Parmelee's adult daughter but is unrelated to Schnader. Schnader resides in a house on Pine Lake Road in Salem. He also owns a separate guest house on that property.

{¶3} During the end of May 2014, Sloan and her minor children moved into Schnader's guest house. Parmelee and her grandson moved into Schnader's main residence. The parties did not enter into a written lease and appellants paid no rent to Schnader. On July 25, 2014, Parmelee informed Schnader that she was going to find other living arrangements. The next day, Schnader changed the locks on the main house and the guest house. He also placed some of appellants' personal property in bags and placed the bags on the porch.

{¶4} On July 27, 2014, appellee Officer Steven Kotheimer was dispatched to Schnader's property on a call from Parmelee. Officer Kotheimer arrived at the property before appellants arrived there. Appellants sought to retrieve their personal belongings from inside of Schnader's house and guest house, which were both locked. Officer Kotheimer told appellants that he could not force Schnader to grant them access to the houses.

{¶5} Officer Kotheimer informed appellants that a dispute over personal property was a civil matter and if Schnader did not want them on his property, they would have to leave. Officer Kotheimer did not forcibly remove appellants from Schnader's property. Appellants loaded up the bags of their belongings that Schnader had left outside and they left.

{¶6} Appellants returned to Schnader's property on July 31, 2014 and again on August 4, 2014. Sloan collected all of her remaining personal property. Parmelee claims some of her personal property is still in Schnader's house.

**{¶7}** Appellants filed a 16-count complaint on July 22, 2015, against Schnader and appellees. Of the 16 counts, four were against appellees. Appellants asserted that appellees deprived them of their Fourteenth Amendment right against deprivation of property without due process and their Fourth Amendment right against illegal seizures of their persons and property. They also asserted Goshen Police District and Goshen Township failed to adequately train its officers in landlord-tenant disputes.

**{¶8}** Appellees filed a motion for summary judgment on April 1, 2016, asserting they were entitled to qualified immunity. Appellants filed a response in opposition.

**{¶9}** A magistrate considered appellees' summary judgment motion.

**{¶10}** As to the claims against Officer Kotheimer, the magistrate found that appellants were denied their possessory right to their personal property by Schnader. He pointed out that when Officer Kotheimer arrived on the scene, Schnader had already changed the locks and placed some of appellants' personal property outside. The magistrate noted that Officer Kotheimer played no role in this. Moreover, he found it was undisputed that Schnader would not allow appellants into his property to retrieve the rest of their belongings. The magistrate noted that when asked what the officer did to lead them to believe he was evicting them, appellants only stated that Officer Kotheimer denied them access to the property. But the magistrate noted that the doors were locked, appellants did not have a key, and they admitted the only way they could have gained access into the houses would have been to break down a door or window. Moreover, the magistrate noted that appellants were able to return to their own homes on the day in question. Thus, the magistrate determined that Officer Kotheimer did not meaningfully interfere with appellants' possessory interests in their property and, therefore, there was no seizure under the Fourteenth Amendment.

**{¶11}** As to the claims against the Goshen Police District (GPD), the magistrate found that the GPD was a township police department and is not sui juris,

a legal entity. Therefore, the magistrate found the GPD did not have the legal capacity to be sued.

**{¶12}** Finally, as to the claims against Goshen Township, the magistrate found that appellants failed to establish that the township was on notice that an alleged lack of training could lead to violations of citizens' rights and that the failure to take action amounted to deliberate indifference. Moreover, the magistrate found there was no need for training by the township since there was no injury caused by an officer in this case and appellants failed to allege any past history of injury or abuse.

**{¶13}** Based on the above, the magistrate granted appellees' motion for summary judgment and dismissed the complaint against them.

**{¶14}** Appellants filed objections to the magistrate's decision arguing the magistrate misconstrued the law dealing with qualified immunity.

**{¶15}** On October 19, 2016, the trial court ruled on the objections and found the magistrate properly determined the factual issues and appropriately applied the law. Therefore, the trial court overruled appellants' objections, adopted the magistrate's decision, and entered summary judgment in favor of appellees.

**{¶16}** On January 25, 2017, the trial court entered an amended judgment entry adding the Civ.R. 54(B) language that there was no just reason for delay. Appellants filed a timely notice of appeal On February 13, 2017.

**{¶17}** Appellants now raise two assignments of error asserting summary judgment was in error.

**{¶18}** In reviewing a trial court's decision on a summary judgment motion, appellate courts apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.*, 128 Ohio App.3d 546, 552, 715 N.E.2d 1179 (7th Dist.1998). Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only

conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Flemming*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

{¶19} Appellants' first assignment of error states:

> THE LOWER COURT ERRED IN FINDING THAT DEFENDANT-APPELLEE STEVEN KOTHEIMER WAS ENTITLED TO QUALIFIED IMMUNITY.

{¶20} In their first assignment of error, appellants contend the trial court erred in finding that Officer Kotheimer was entitled to immunity. Appellants claim that Officer Kotheimer ordered them to leave under threat of arrest. They assert that an illegal eviction conducted with law enforcement present to prevent interference constitutes a Fourth Amendment violation by the officer. Appellants assert they presented evidence that Schnader was their landlord, they had rental agreements with him, and their belongings were in their premises. Appellants claim these same facts demonstrate a due process violation because Officer Kotheimer, in effectuating the eviction, interfered with their possessory interest in their property.

{¶21} Appellants brought their claims against appellees pursuant to 42 U.S.C. §1983. In order to prove a claim under §1983, "a plaintiff must establish: (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that he was subjected to or caused to be subjected to this deprivation by a person acting under color of state law." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994), citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

{¶22} A governmental official sued under 42 U.S.C. §1983 may assert the defense of qualified immunity when their conduct "does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known." *Vlcek v. Chodkowski*, 2d Dist. No. 26078, 2015-Ohio-1943, ¶ 20, quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In determining whether to grant qualified immunity, the court must apply a three-part test: (1) whether the facts when viewed in the light most favorable to the plaintiff shows that a constitutional violation has occurred; (2) whether the violation involved a clearly established constitutional right of which a reasonable person would have known; and (3) whether the plaintiff has offered sufficient evidence to demonstrate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Id.* citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir.2005). Once the defendant raises the defense of qualified immunity, it is the plaintiff's burden to establish that the defendant is not entitled to qualified immunity. *Id.* citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir.2006).

**{¶23}** According to Parmelee, Schnader suggested it would be cheaper if they only paid one set of expenses so she moved into Schnader's house in May of 2014. (Parmelee Dep. 11-13). She did not have a written lease with Schnader, did not pay rent to Schnader, her name was not on the deed to Schnader's house, and her driver's license did not reflect Schnader's address. (Parmelee Dep. 13, 15). She did have a key to the house. (Parmelee Dep. 13). Additionally, Parmelee still owned her own house in Youngstown during the time she stayed with Schnader. (Parmelee Dep. 16).

**{¶24}** Similarly, Sloan stated that she began living in Schnader's guest house in May of 2014. (Sloan Dep. 8, 9). Sloan did not pay rent, did not have a written rental agreement, her name was not on the deed, and her driver's license did not reflect Schnader's address. (Sloan Dep. 8, 12). She did have a key. (Sloan Dep. 8). Additionally, Sloan stated that she lived at an address in Columbiana from April 2007 until March 2015. (Sloan Dep. 6).

**{¶25}** Parmelee stated that on the day in question she went to Schnader's property with Sloan and found numerous bags on the front porch with Sloan's

belongings in them. (Parmelee Dep. 24). Parmelee stated that the police officer who was there told them they needed to load the bags into their car or their bags would be gone. (Parmelee Dep. 26). Parmelee thought the officer left and then another officer returned later. (Parmelee Dep. 28). She also stated that the officer told her and Sloan to hurry up and to leave the property and that he would physically remove her from the property if she did not leave. (Parmelee Dep. 29, 34). But he did not physically remove her. (Parmelee Dep. 34).

{¶26} According to Sloan, when she arrived at Schnader's property on the day in question, Officer Kotheimer was already there. (Sloan Dep. 11). She stated that she pleaded with the officer to let her into both the guest house and the main house because all of her belongings were in there. (Sloan Dep. 12).

{¶27} Parmelee stated that she tried to get into Schnader's house on the day in question but the door was locked and Schnader would not answer the door. (Parmelee Dep. 29).

{¶28} When asked whether Parmelee could have gotten into Schnader's house had the officer not been there, Parmelee stated, "I suppose if I broke a door or a window maybe." (Parmelee Dep. 34).

{¶29} When asked how Officer Kotheimer deprived her of her constitutional rights, Sloan simply stated that he "just wouldn't allow me to go in and get my things." (Sloan Dep.16). Then, when asked about her damages, Sloan replied that she suffered psychological damages from what Schnader had done and that Schnader still had her belongings. (Sloan Dep. 17-18). When asked how the police department was responsible for her damages, Sloan responded, "[j]ust in the manner and way he [Officer Kotheimer] was treating us that day." (Sloan Dep. 18).

{¶30} According to Officer Kotheimer, he was dispatched to Schnader's property on the day in question after Parmelee placed a call to the police to meet her there. (Kotheimer Dep. 14-15). When he arrived, Parmelee was not there yet. (Kotheimer Dep. 17). Schnader was home and Officer Kotheimer spoke with him. (Kotheimer Dep. 30). Schnader relayed to the officer that appellants did not reside at

his property, although he had allowed them to stay there, and he did not want any contact with them at that time. (Kotheimer Dep. 30-31, 36). Officer Kotheimer never entered the residence. (Kotheimer Dep. 40).

**{¶31}** Officer Kotheimer testified that appellants arrived and he spoke with them. (Kotheimer Dep. 39). He stated that Parmelee showed him her driver's license, which had an address other than Schnader's address and she indicated she had been staying with a friend. (Kotheimer Dep. 39). He told appellants that this was a civil matter and if Schnader did not want them in his house, there was nothing he could do about it. (Kotheimer Dep. 40). He told appellants he could not force Schnader to let them in. (Kotheimer Dep. 41-42). He told appellants they would have to leave if Schnader did not want them on his property. (Kotheimer Dep. 42-43).

**{¶32}** Based on the evidence, the trial court properly granted summary judgment in favor of Officer Kotheimer and correctly found that he was entitled to qualified immunity.

**{¶33}** The testimony is uncontroverted that Schnader changed the locks and did not allow appellants into the house or guest house and that Schnader placed some of appellants' belongings into bags and left them on the porch. The testimony is also uncontroverted that had Officer Kotheimer not responded to the call at Schnader's house, appellants would not have been able to gain access to the inside of the house or the guest house. Thus, whether Officer Kotheimer was present at this scene made no difference as to whether appellants would have been able to access their belongings that were allegedly inside Schnader's house and guest house. Appellants were locked out by Schnader. The only way they could have gained entrance was to break down a door or window. Appellants may have been deprived of their property by Schnader. But the evidence is clear that Officer Kotheimer had nothing to do with Schnader's conduct.

**{¶34}** Even construing the evidence in the light most favorable to appellants, as we are required to do, does not suggest in any way that Officer Kotheimer violated

appellants' clearly established statutory or constitutional rights. Thus, summary judgment in Officer Kotheimer's favor was proper.

{¶35} Accordingly, appellant's first assignment of error is without merit and is hereby overruled.

{¶36} Appellants' second assignment of error states:

THE LOWER COURT ERRED IN FINDING THAT THE ESTABLISHED FACTS SUPPORTED A JUDGMENT THAT DEFENDANT-APPELLEES GOSHEN POLICE DISTRICT AND GOSHEN TOWNSHIP HAD NO GOVERNMENTAL LIABILITY.

{¶37} In this assignment of error, appellants assert the trial court erred in finding that because there was no injury to appellants by Kotheimer, appropriate training would not have prevented the injury.

{¶38} We will address the claims against the GPD and the township separately.

{¶39} As to the GPD, "[a] city police department is not sui juris; the real party in interest is the city itself." *Cooper v. Youngstown*, 7th Dist. No. 15 MA 0029, 2016-Ohio-7184, ¶ 26. The same applies to townships. Township police departments cannot sue or be sued. *Smith v. McBride*, 10th Dist. No. 09AP-571, 2010-Ohio-1222, ¶ 8, aff'd, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954. Therefore, the trial court properly found the GPD could not be sued here and summary judgment in its favor was proper.

{¶40} As to Goshen Township, a municipality can only be held liable on a §1983 claim if the plaintiff demonstrates that the injury suffered was a direct result of the city's official policy or custom. *Slusher v. Carson*, 540 F.3d 449, 456-457 (6th Cir.2008), citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694-695, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Sixth Circuit explained:

The inadequacy of police training only serves as a basis for § 1983

liability "where the failure to train amounts to *deliberate indifference* to the rights of persons with whom the police come into contact." *Harris*, 489 U.S. at 388, 109 S.Ct. 1197 (emphasis added). "To establish deliberate indifference, the plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.' " *St. John v. Hickey*, 411 F.3d 762, 776 (6th Cir.2005) (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir.2005)); see also *Miller v. Calhoun County*, 408 F.3d 803, 816 (6th Cir.2005) (concluding that, absent evidence of a "history of similar incidents" or notice, or evidence that the governmental entity's "failure to take meliorative action was deliberate," plaintiff's claim of municipal liability under § 1983 fails).

*Id.* at 457.

{¶41} Firstly, we note that appellants presented no evidence that Goshen Township has a history of police officers committing constitutional violations while dealing with property disputes or landlord-tenant issues. In fact, appellants did not present evidence of even one prior instance similar to their allegations here. Thus, there is no evidence that the township "ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." On this basis alone, appellants' claims against the township must fail.

{¶42} Moreover, appellants offered no evidence that the alleged injury they suffered was a direct result of the township's official policy or alleged lack of training. The alleged injury suffered by appellants was that they were denied access to their belongings. But as discussed above, it was Schnader who changed the locks on the doors and denied appellants access. And it was Schnader who bagged up their belongings and left them on the porch. Thus, there is no evidence of a causal connection between the township's alleged failure to train its officers and appellants' alleged injury.

{¶43}    In sum, the trial court properly granted summary judgment in favor of the GPD and Goshen Township.

{¶44}  Accordingly, appellants' second assignment of error is without merit and is overruled.

{¶45} For the reasons stated above, the trial court's judgment is hereby affirmed.


Waite, J.,   concur

Robb, P. J.,   concur